Filed 9/28/18

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


MARCO ANTONIO ATEMPA et al.,

    Plaintiffs and Respondents,

    v.

PAOLO PEDRAZZANI,

    Defendant and Appellant.

D069001

(Super. Ct. No. 37-2013-00058208-CU-OE-CTL)


APPEALS from a judgment and a postjudgment order of the Superior Court of San Diego County, Joel M. Wohlfeil, Judge. Judgment affirmed as modified. Postjudgment order affirmed.


Lawton Law Firm, Dan Lawton and Joseph C. Kracht for Defendant and Appellant.

Carl M. Lewis; Rodolfo Ruiz-Velasco; and Thomas M. Diachenko for Plaintiffs and Respondents.

Labor Code section 558,[1] subdivision (a) provides that an employer "or other person acting on behalf of an employer" who violates or causes a violation of the state's applicable overtime laws shall be subject to a civil penalty. Similarly, section 1197.1, subdivision (a) provides that an employer "or other person acting either individually or as an officer, agent, or employee of another person" who pays or causes to pay an employee less than the state's applicable minimum wage shall be subject to a civil penalty. Following a trial, the superior court issued civil penalties against an individual defendant—namely, the corporate employer's owner, president, secretary, and director— as the "other person" who caused violations of these two statutes.

There is no issue on appeal as to the requirements for, or the showing made in support of, the finding that Pedrazzani qualified as a person other than the corporate employer who either violated the overtime pay and minimum wage laws or caused the statutory violations. Rather, on appeal the principal issue is whether, as a matter of substantive law, any individual *other than the corporate employer* can ever be found liable for the civil penalties associated with statutory violations in the payment of wages to a corporate employee where, as here, there is no allegation or finding that the corporate laws have been misused or abused for a wrongful or inequitable purpose. More specifically, we must determine whether section 558, subdivision (a) (§ 558(a)), and section 1197.1, subdivision (a) (§ 1197.1(a)) authorize recovery of the civil penalties for violation of specified overtime pay and minimum wage laws from a person *other than the*

_____

[1]     All further unidentified statutory references are to the Labor Code.

2

*corporate employer* that failed to pay the proper wages, where there is no allegation or contention that the alter ego doctrine applies or that there is any other basis on which to pierce the veil of the corporate employer.

As we will explain, the Labor and Workforce Development Agency (LWDA), which includes the Labor Commissioner,[2] is statutorily authorized to recover the Labor Code's civil penalties at issue in this appeal from the individual officer/agent of the corporate employer. (§§ 558(a), 1197.1(a).) As we will further explain, the Labor Code Private Attorneys General Act of 2004 (PAGA) (§ 2698 et seq.) authorizes an aggrieved employee to recover these civil penalties in lieu of the LWDA (§ 2699, subd. (a)), and Pedrazzani does not argue that the trial court erred by applying this statute to the plaintiffs' claims for the civil penalties here. However, as to the awards of civil penalties under section 558(a), the parties agree that the court did not order the penalties distributed pursuant to the statutory scheme.

We will also conclude that, under the showing here, Pedrazzani did not meet his burden of establishing reversible error in the superior court's awards to the plaintiff employees of attorney fees, costs, and postjudgment interest from the individual officer/agent of the corporate employer.

Accordingly, we will modify that portion of the judgment which awards certain civil penalties under section 558(a) and affirm the judgment as modified; and we will

---

[2]     The Labor Commissioner is the chief of the Division of Labor Standards Enforcement. (§ 21.) The Division of Labor Standards Enforcement is a division of the Department of Industrial Relations (§ 79), which is part of the LWDA (§ 50).

affirm a postjudgment order which set the amount of attorney fees for which Pedrazzani is liable.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

Defendant Pedrazzani incorporated defendant Pama, Inc. (Pama) in 2002. At all relevant times, Pedrazzani was the owner, president, secretary, and director of Pama, which did business as Via Italia Trattoria (Via Italia), a restaurant in Encinitas. During the time period for which the trial court awarded the civil penalties at issue, Pama employed 71 individuals at Via Italia.

Included among those Pama employees were plaintiffs Marco Antonio Atempa and Keilyn Reyes (together Plaintiffs).[4] Hired in 2008, Atempa was first a dishwasher and later a cook. Reyes was hired in 2011 as a dishwasher. Plaintiffs both ended their work at Via Italia at different times in mid-2013.

Atempa filed the underlying action against Pama and Pedrazzani in July 2013. In the operative first amended complaint, Reyes joined the action and together with Atempa

---

[3]    We view and recite the evidence in a light most favorable to the judgment on appeal following a trial. (*Phillippe v. Shapell Industries* (1987) 43 Cal.3d 1247, 1252; *Bigler-Engler v. Breg, Inc.* (2017) 7 Cal.App.5th 276, 286.)

[4]    In the operative complaint, Plaintiffs alleged that they were *employed by* both Pama and Pedrazzani, and they testified at trial that they *worked at* Via Italia. The parties do not refer us to *evidence* of the identity of Plaintiffs' *employer*, although in the appellate briefing neither Pedrazzani nor Plaintiffs contend that Pedrazzani was Plaintiffs' employer. Consistently, when the trial court ultimately awarded wages to Plaintiffs, only Pama was liable. Thus, like the parties and the trial court, we have assumed that Plaintiffs were employed by *Pama*, not Pedrazzani.

alleged the following seven employment-based causes of action against Pama: failure to pay overtime wages; failure to pay minimum and regular wages; failure to timely furnish accurate itemized wage statements; unfair business practices; waiting time penalties; failure to maintain personnel and payroll records; and failure to provide compliant meal and rest periods. In addition, Plaintiffs alleged an eighth cause of action against both Pama and Pedrazzani for civil penalties under PAGA.

In a bench trial, the parties tried their case over nine days during the January through April 2015 time period. At the end of Pama's counsel's opening statement, the court denied Pedrazzani's motion for nonsuit that raised the same issue that Pedrazzani raises in this appeal. Ultimately, the court issued a detailed statement of intended decision in Plaintiffs' favor on each cause of action in the operative complaint. The parties filed objections to and requests for clarification of the statement of intended decision, as well as responses to the other side's objections and requests, although the record does not contain a final statement of decision. Following proceedings related to whether Plaintiffs were entitled to interest and certain civil penalties, the court filed its judgment in July 2015.

The rulings that are at issue in this appeal are in favor of Plaintiffs and against Pedrazzani and Pama, jointly and severally, and include the following: $1,937 in civil penalties in favor of Atempa under section 558 (overtime violations); $2,036 in civil penalties in favor of Reyes under section 558 (overtime violations); and $27,101 in favor of Plaintiffs, on behalf of themselves and the State of California and all aggrieved

5

employees, in civil penalties under section 1197.1 (minimum wage violations).[5]  These specified amounts total $31,074, as follows:  $3,973 for section 558 penalties, and $27,101 for section 1197.1 penalties.  The judgment also provides that Pedrazzani is liable to Plaintiffs for postjudgment interest on the civil penalties, as well as attorney fees and costs to be determined in later proceedings.

In postjudgment proceedings, the trial court granted and denied a number of posttrial motions.  As relevant to issues in this appeal, the court set the amount of attorney fees, ruling that Plaintiffs could recover attorney fees of $315,014 from Pedrazzani pursuant to section 2699, subdivision (g)(1), which is part of PAGA and provides in part:  "Any employee who prevails in any [PAGA] action shall be entitled to an award of reasonable attorney's fees . . . ."

Pedrazzani and Pama timely appealed from both the judgment and the postjudgment order regarding attorney fees.

During the pendency of this appeal, prior to briefing, Pama filed for bankruptcy. We stayed the appeal from approximately June 2016 through February 2017—at which time we dismissed Pama's appeal at the request of the trustee of Pama's bankruptcy estate, and Pedrazzani proceeded with his appeal.  All of the awards at issue in this appeal were

---

5    These rulings were all made based on the allegations and proof related to the eighth cause of action under PAGA for *civil penalties* resulting from violations of the state's overtime pay and minimum wage laws.  To the extent amounts "sufficient to recover underpaid wages" were included as part of the statutorily authorized *civil penalties* under sections 558(a) and 1197.1(a), they are part of the appeal; however, we do not mention the court's awards of wages *qua* wages, for which only Pama was found liable and are not part of the appeal.

against Pedrazzani and Pama, jointly and severally. Because Pama is no longer a party, we will not mention the rulings against Pama except where necessary to place in context the rulings against Pedrazzani.

Also during the pendency of the appeal, we requested and received supplemental briefs from the parties.

II.

DISCUSSION

In the judgment, the court ruled that, under PAGA (§ 2699, subd. (a)), Plaintiffs had standing to recover from Pedrazzani civil penalties based on statutory overtime pay and minimum wage violations—violations that Pedrazzani does not challenge on appeal. More specifically, the judgment provides that Plaintiffs are entitled to recover from Pedrazzani $31,074 in civil penalties—$3,973 based on overtime pay violations (§ 558(a)), and $27,101 based on minimum wage violations (§ 1197.1(a))—plus postjudgment interest on the penalties, attorney fees, and costs. In a postjudgment order, the court ruled that, under PAGA (§ 2699, subd. (g)), Plaintiffs were entitled to recover from Pedrazzani $315,014 in attorney fees, having successfully obtained their award of civil penalties.

The relevant statutes, each of which we discuss in greater detail *post*, provide in part as follows:

> "Any employer *or other person acting on behalf of an employer* who violates, or causes to be violated, a section of this chapter . . . regulating hours and days of work in any order of the Industrial Welfare Commission *shall be subject to a civil penalty . . . .*" (§ 558(a), italics added.)

7

"Any employer *or other person acting either individually or as an officer, agent, or employee of another person*, who pays or causes to be paid to any employee a wage less than the minimum fixed by an applicable state or local law . . . *shall be subject to a civil penalty . . . .* (§ 1197.1(a), italics added.)

"[A]ny provision of th[e Labor C]ode that provides for a civil penalty to be assessed and collected by the [LWDA, including the Labor Commissioner] for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee . . . ." (§ 2699, subd. (a).)

"[C]ivil penalties recovered by aggrieved employees shall be distributed as follows: 75 percent to the [LWDA] . . . and 25 percent to the aggrieved employees." (§ 2699, subd. (i).)

"Any employee who prevails in any [PAGA] action shall be entitled to an award of reasonable attorney's fees and costs . . . ." (§ 2699, subd. (g)(1).)

On appeal, Pedrazzani argues that, because he was merely "an individual officer of [Plaintiffs'] corporate employer" (Pama), the trial court erred in ruling that he was liable for the civil penalties, interest, costs, and attorney fees. Pedrazzani contends that he should not be liable for these awards, since Pama (not Pedrazzani) was the employer, and there were no allegations or findings either that he was the alter ego of Pama or that he acted outside the scope of his agency for Pama. Stated differently, Pedrazzani contends that, because he was not the corporate employer responsible for the payment of Plaintiffs' wages, without allegations or evidence entitling the court to pierce the employer's corporate veil, he cannot be responsible for the penalties resulting from the payment of wages in violation of the overtime pay or minimum wage laws.

As we explain, the trial court did not err in concluding that, for purposes of assessing penalties under sections 558(a) and 1197.1(a), Pedrazzani is responsible as an "other person" who caused the overtime pay and minimum wage violations. While not

8

directly challenged by Pedrazzani on appeal, we will also confirm that subdivision (a) of section 2699 authorizes Plaintiffs to recover the civil penalties assessed as a result of the overtime pay and minimum wage violations; however, under subdivision (i), the court erred in failing to distribute the section 558(a) civil penalties according to the statutory directive. Finally, we will explain both that the trial court did not err in awarding Plaintiffs attorney fees pursuant to section 2699, subdivision (g)(1), and that Pedrazzani forfeited consideration of the awards of postjudgment interest and costs by failing to present any argument or legal authority in support of his position on appeal.

A. *The Trial Court Did Not Err in Ruling That Pedrazzani Is Liable for the Civil Penalties, but Failed to Distribute the Section 558(a) Penalties as Required*

Pedrazzani does not raise any issue on appeal as to the applicable legal standard or the showing necessary to find a person other than the employer responsible for paying or causing to be paid wages in violation of the overtime pay or minimum wage laws that subject such a person to civil penalties under sections 558(a) and 1197.1(a). Nor does Pedrazzani challenge on appeal the substantiality of the evidence at trial here to support the necessary finding that, for purposes of sections 558(a) and 1197.1(a), Pedrazzani factually qualified as an "other person" subject to civil penalties for violating or causing to be violated the overtime pay and minimum wage laws.[6]

We are left with a purely legal issue on appeal: Under sections 558(a) and 1197.1(a), can an individual officer or agent of a corporate employer be personally liable

---

[6] We express no opinion on either of these issues, leaving their resolution to later cases in which the issues have been raised in the trial court and briefed on appeal.

9

to an employee of the corporate employer for the civil penalties authorized for overtime pay and minimum wage violations, where there is no allegation or finding of either an alter ego relationship between the individual officer or agent and the corporate employer or acts by the individual officer or agent outside the scope of the agency for the corporate employer?

Based on the unchallenged evidentiary showing and related findings as to Pedrazzani's participation in the payment of wages in violation of the overtime pay and minimum wage laws in this case, the answer is "yes." At part II.A.2., *post*, we explain that sections 558 and 1197.1 authorize the *Labor Commissioner* to recover the civil penalties from Pedrazzani; and at part II.A.3., *post*, we explain that section 2699, subdivision (a) authorized *Plaintiffs*, in place of the Labor Commissioner, to recover the sections 558(a) and 1197.1(a) civil penalties from Pedrazzani.

In reaching each of these conclusions, we will apply a de novo standard of review. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [interpretation of statute is question of law resolved de novo]; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [when decisive facts are undisputed, the matter is question of law subject to independent review].)

Under settled principles of statutory construction, we " 'look to the statute's words and give them "their usual and ordinary meaning" ' " in order to effectuate the purpose of the law. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527.) " ' "The statute's plain meaning controls the court's interpretation unless its words are ambiguous." ' " (*Ibid.*; accord, *Martinez v. Combs* (2010) 49 Cal.4th 35, 51 (*Martinez*) ["If the words themselves

10

are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs"].)  A " 'statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect.' "  (*Elk Hills Power, LLC v. Board of Equalization* (2013) 57 Cal.4th 593, 610.)  Only where the statutory language allows for more than one reasonable interpretation may courts consider other aids, such as the statute's purpose, legislative history, and public policy. (*Reid*, at p. 527; *Martinez*, at p. 51.)

Here, Pedrazzani's challenge to the award of civil penalties is not based on the statutory language—indeed, Pedrazzani does not discuss the applicable words or their meanings—but rather on the contention that the trial court's ruling is "unprecedented" because it directly conflicts with the common law associated with alter ego liability or corporate agency.[7]

> " 'Ordinarily, a corporation is regarded as a legal entity separate and distinct from its stockholders, officers and directors.  Under the alter ego doctrine, however, where a corporation is used by an individual or individuals, or by another corporation, to perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate entity and treat the corporation's acts as if they were done by the persons actually controlling the corporation.' "

---

[7] What is not unprecedented are the numerous other areas of the law in which a corporate agent faces liability for the acts of the corporation without a showing of alter ego or a piercing of the corporate veil.  (Friedman et al., Cal Practice Guide: Corporations (The Rutter Group 2018) §§ 6:283.1 to 6:284.19, pp. 6-93 to 6-102 [liability for corporate signatories, corporate torts, crimes, unpaid federal taxes, unpaid state unemployment insurance contributions, unpaid state sales taxes, violations of environmental laws, violations of federal and state securities laws, deceptive marketing under federal law, and employee compensation under federal law].)

(*Capon v. Monopoly Game LLC* (2011) 193 Cal.App.4th 344, 357 (*Capon*); *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538 (*Sonora Diamond*) [same].)

We begin with the presumption that, by its legislation, the Legislature did not intend to alter or displace the common law. (*McMillin Albany LLC v. Superior Court* (2018) 4 Cal.5th 241, 249 (*McMillin Albany*).) If possible, we construe statutes as consonant with existing common law, attempting to reconcile the two. (*Ibid.*) If, however, there is " ' "no rational basis for harmonizing" ' " the statutory scheme and the common law, then the statute prevails, and "settled common law principles must yield." (*Ibid.*) To abrogate the common law, the Legislature need not expressly declare such an intent; "it is enough that 'the language or evident purpose of the statute manifest a legislative intent' " that the common law not apply. (*Ibid.*; see, e.g., *Verdugo v. Target Corp.* (2014) 59 Cal.4th 312, 326-327 [giving examples where the Legislature implicitly abrogated the common law].)

1. *Motions for Judicial Notice (Cal. Rules of Court, Rule 8.252)*

In support of his opening brief, Pedrazzani asks us to take judicial notice of (1) a report from the United States Small Business Administration Office of Advocacy, and (2) a declaration of the chapter 7 trustee of Pama's bankruptcy estate filed in the bankruptcy court. Pedrazzani proffers these documents on the basis that each "concerns the fate of a locally-owned small business (the Via Italia restaurant)." However, the fate of Via Italia will not assist our interpretation or application of any of the statutes at issue, and Pedrazzani does not suggest how or why this appeal involves the fate of Via Italia.

12

To the contrary, Via Italia dismissed its appeal more than seven months before Pedrazzani filed the motion for judicial notice, and the only issues on appeal relate to whether Pedrazzani is personally liable for the civil penalties (and related postjudgment interest, attorney fees, and costs).  Accordingly, because the proffered documents are not "necessary, helpful, or relevant" to the resolution of the appeal, Pedrazzani's motion for judicial notice of these documents is denied.  (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 (*Jordache Enterprises*); *Duarte v. Pacific Specialty Ins. Co.* (2017) 13 Cal.App.5th 45, 51, fn. 6 (*Duarte*).)

In support of his first supplemental brief, Pedrazzani filed a request for judicial notice of a copy of a two-page news release (No. 2017-63) issued by the California Department of Industrial Relations on July 25, 2017, entitled, "Labor Commissioner's Office Cites Oakland Construction Company Over $3.5 Million for Wage Theft Violations."  Because this document—which Pedrazzani describes as "relat[ing] the Department[ of Industrial Relations'] view of the facts of its recent investigation and citation of an Oakland contractor for multiple wage theft and labor law violations"—is not "necessary, helpful, or relevant" to the legal issues in this appeal, we deny Pedrazzani's request that we judicially notice this document.  (*Jordache Enterprises, supra*, 18 Cal.4th at p. 748, fn. 6; *Duarte, supra*, 13 Cal.App.5th at p. 51, fn. 6.)

In support of their first supplemental brief, Plaintiffs filed a request for judicial notice of copies of the following seven documents:  (1) a 12-page report by the State of California Department of Industrial Relations entitled, "2014-2015 Fiscal Year Report on the Effectiveness of the Bureau of Field Enforcement, by the State of California

13

Department of Industrial Relations"; and (2) six two- to three-page wage citations, each issued by the State of California, Department of Industrial Relations, Labor Commissioner's Office, to a corporate employer and one or more individuals "each jointly and severally liable" for civil penalties under sections 558(a), and 1197.1(a). Because the 12-page report is not "necessary, helpful, or relevant" to the legal issues in this appeal, we deny Plaintiffs' request that we judicially notice this document. (*Jordache Enterprises, supra*, 18 Cal.4th at p. 748, fn. 6; *Duarte, supra*, 13 Cal.App.5th at p. 51, fn. 6.) We grant Plaintiffs' request and take judicial notice of the Labor Commissioner's six wage citations, which we mention at footnote 11, *post*. (Evid. Code, §§ 459, subd. (a), 452, subd. (c).)

2. *Sections 558 and 1197.1 and the Common Law*

In California, the Legislature has decided that *both* the employer *and* any "other person" who causes a violation of the overtime pay or minimum wage laws are subject to specified civil penalties. (§§ 558(a) [overtime], 1197.1(a) [minimum wage].) Neither of these statutes mentions the business structure of the employer, the benefits or protections of the corporate form, or any potential reason or basis for disregarding the corporate form. To the contrary, as we explain, the business structure of the employer is irrelevant; if there is evidence and a finding that a party *other than the employer* "violates, or causes to be violated" the overtime laws (§ 558(a)) or "pays or causes to be paid to any employee" less than minimum wage (§ 1197.1(a)), then that party is liable for certain civil penalties *regardless of the identity or business structure of the employer*.

14

a. *The Statutory Language is Unambiguous*

The challenged language of both statutes is unambiguous, and Pedrazzani does not contend otherwise. Pedrazzani argues that only an employer can be liable for wages, and without evidence that the agent was the corporation's alter ego (or any other reason to pierce the corporate veil), the agent cannot be liable for the wages and related debts or obligations of the corporate employer. More specifically, according to Pedrazzani, because he was not Plaintiffs' employer, he cannot be responsible for the penalties associated with underpayment of Plaintiffs' wages. We disagree.

In support of his position, Pedrazzani relies on the following two opinions from our Supreme Court and a portion of an Industrial Welfare Commission (IWC) wage order, each of which deals with the determination of who is an "employer": *Reynolds v. Bement* (2005) 36 Cal.4th 1075 (*Reynolds*), abrogated in part on another issue by *Martinez, supra*, 49 Cal.4th 35; and IWC wage order No. 4-2001 (Cal. Code Regs., tit. 8, § 11040, subd. 2(H)).[8] Pedrazzani's reliance is misplaced, because those authorities—and, thus, Pedrazzani's arguments—focus on *the employer's* acts, rather than the

---

[8] Pedrazzani cites to and quotes from IWC wage order No. 4-2001, which is entitled, "Order Regulating Wages, Hours, and Working Conditions in Professional, Technical, Clerical, Mechanical, and Similar Occupations." (Cal. Code Regs., tit. 8, § 11040.) *Martinez, supra*, 49 Cal.4th 35, deals principally with IWC wage order No. 14-2001, which is entitled "Order Regulating Wages, Hours, and Working Conditions in Agricultural Occupations." (Cal. Code Regs., tit. 8, § 11140.) Both wage orders contain the same definition of " 'Employer' ": "any [person, association, organization, partnership, business trust, limited liability company, or corporation] who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." (Compare Cal. Code Regs., tit. 8, § 11040, subd. 2(H) [wage order No. 4-2001] with Cal. Code Regs., tit. 8, § 11140, subd. 2(G) [wage order No. 14-2001].)

15

applicable statutory language in sections 558(a) and 1197.1(a) regarding any "other person" who is responsible for penalties based on *the other person's*, not the employer's, acts. As we explain, *Reynolds* and *Martinez* are both distinguishable, and the IWC's definition of "Employer" in wage order No. 4-2001 is inapplicable.

In *Reynolds*, *supra*, 36 Cal.4th 1075, a former employee filed a class action against the corporate employer's agents (e.g., officers and directors), in part seeking to recover unpaid wages that resulted from overtime in violation of section 1194. (*Reynolds*, at pp. 1082-1083.) Section 1194, a statute not at issue in the present appeal, allows for a private right of action for the recovery of certain unpaid wages without mentioning against whom such an action might be brought: "[A]ny employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." (§ 1194, subd. (a).) The issue on appeal was whether, given the above-quoted statutory language, the corporate employer's *agents* could be held liable for the allegedly unpaid wages. (*Reynolds*, at pp. 1085-1086.) The court held: "Under the common law, corporate agents acting within the scope of their agency are not personally liable for the corporate employer's failure to pay its employees' wages." (*Id.* at p. 1087.) In part, the *Reynolds* court reasoned: "Had the Legislature meant in section 1194 to expose to personal civil liability any corporate agent who 'exercises control' over an employee's wages, hours, or working conditions, it would have manifested its intent more clearly than by mere silence[.]" (*Id.* at p. 1088.)

16

In contrast, in both of the statutes at issue here, in the language of the *Reynolds* opinion, the Legislature *did* "manifest[] its intent more clearly than by mere silence." (See *Reynolds*, *supra*, 36 Cal.4th at p. 1088.) With regard to violations of the state's overtime laws, "[*a*]*ny . . . person* acting on behalf of an employer who violates, or causes to be violated" such laws "shall be subject to a civil penalty" as set forth elsewhere in the statute. (§ 558(a), italics added.) With regard to violations of the state's minimum wage laws, "[*a*]*ny . . . person* acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee" less than the minimum wage "shall be subject to a civil penalty, restitution of wages, liquidated damages payable to the employee, and any applicable penalties imposed pursuant to Section 203" as set forth elsewhere in the statute. (§ 1197.1, subd. (a), italics added.) Thus, for violations of overtime laws, the "other person" liable for the civil penalties must have been "acting on behalf of" the employer (§ 558(a)); whereas for violations of minimum wage laws, there is no requirement that the "other person" liable for the civil penalties have any relationship to the employer, so long as that person pays or causes to be paid less than the prescribed minimum wage (§ 1197.1(a)).

Five years after *Reynolds*, in *Martinez*, *supra*, 49 Cal.4th 35, our Supreme Court revisited the issue of how to determine the responsible party for unpaid wages under section 1194. (*Martinez*, at p. 42.) The court again limited liability for section 1194 wage claims to the actual employer (not the employer's agent)—this time basing the decision on court deference to the IWC's interpretation of one of its own wage orders, No. 14-2001: Because "an employee who sues to recover unpaid . . . wages under

17

section 1194 actually sues to enforce the applicable [IWC] wage order[,]" courts should defer to the commission's wage orders' definition of "employer." (*Martinez*, at p. 62.)  In *Martinez*, the court first acknowledged that, in *Reynolds* it had "looked to the common law rather than the applicable wage order to define employment in an action under section 1194 seeking to hold a corporation's directors and officers personally liable for its employees' unpaid overtime compensation." (*Martinez*, at p. 62.)  The court then disapproved of its prior ruling, concluding that the applicable wage order, not the common law, "properly defines the employment relationship . . . under section 1194." (*Martinez*, at p. 62; see *id*. at p. 50, fn. 12 [*Reynolds* "spoke too broadly in concluding that the common law defines the employment relationship in actions under section 1194"].)

Thus, in both *Reynolds* and *Martinez*, a former employee was seeking *wages* from a defendant agent of the corporate employer; the statute under consideration (§ 1194) allowed the former employee to recover such *wages*, but did not identify who might be liable; and the issue was how to determine the identity of the "employer" for purposes of the former employee's private right of action for such *wages*. (*Reynolds*, *supra*, 36 Cal.4th at pp. 1083, 1085-1089; *Martinez*, *supra*, 49 Cal.4th at p. 42.)  In contrast, here, the claims are for *civil penalties* from an officer/agent of the corporate employer; the statutes under consideration expressly allow for the recovery of such *civil penalties* from an officer/agent of the corporate employer (upon a sufficient showing that the officer/agent was responsible for the underlying wage violation); and, for purposes of

18

recovering such *civil penalties* from the employer's agent, the identity of the employer—including the employer's business structure—is irrelevant.

Likewise, the IWC's definition of "Employer" in wage order No. 4-2001, set forth at footnote 8, *ante*, is not helpful. First, the parties do not dispute the identity of Plaintiffs' employer; it was Pama, a corporation. (See fn. 4, *ante*.) Second, Pedrazzani's liability for the civil penalties is not based on a finding that he was Plaintiffs' "employer," but rather, under the specific statutes at issue (§§ 558(a), 1197.1(a)), that he was a person *other than the employer* who violated or caused to be violated certain overtime pay and minimum wage laws. Finally, the issue on appeal under the applicable statutes has nothing to do with identifying the employer; the issue is whether someone *other than the employer* can be liable for these civil penalties.

In closing, we note that dictum in *Reynolds* actually suggests the result that we reach here. After holding as a matter of law that, under section 1194, a corporate employer's officers and directors are not personally liable for the corporation's obligation for unpaid overtime wages,[9] the court suggested that there are *other* "means by which an

_____

[9] Nothing in this opinion should be read as suggesting that, under section 558(a) or section 1197.1(a), a corporate employer's officers/agents may be liable for *wages* qua *wages*. These statutes are limited to the recovery of *civil penalties*, which in this case include: a flat amount based on the number of violations, and "an *amount sufficient* to recover underpaid wages" (§ 558(a)(1), (2), italics added); and a flat amount based on the number of violations, specified liquidated damages and applicable penalties, and "an *amount sufficient* to recover underpaid wages" (§ 1197.1(a), italics added). This is in contrast with section 1194, subdivision (a), where, upon sufficient showing, an employee may recover actual *wages*, interest, attorney fees and costs of suit. As a general rule, a corporate employer's officers/agents are not personally liable for the employer's failure to pay employees contractual or statutory wages, overtime compensation, vested vacation

19

employee can seek recovery against a corporate agent" for claims based on remedies for other statutory violations. (*Reynolds*, *supra*, 36 Cal.4th at p. 1089.) One possibility, according to the Supreme Court, is under sections 558(a) and 2699, subdivision (a)—pursuant to which a person " 'acting on behalf of an employer' " is subject to a civil penalty (§ 558(a)) that can be collected by the "aggrieved employee" under PAGA (§ 2699, subd. (a)).[10] (*Reynolds*, at p. 1089; accord, *Bradstreet v. Wong* (2008) 161 Cal.App.4th 1440, 1451, abrogated in part on another issue by *Martinez*, *supra*, 49 Cal.4th 35.) Indeed, in *Reynolds*, Justice Moreno commented that the language in section 558(a), which allows for the recovery of civil penalties from a " 'person acting on behalf of an employer' " is "*a phrase conceivably broad enough to include corporate officers and agents in some cases*." (*Reynolds*, at p. 1094 (conc. opn. of Moreno, J.).)

For the foregoing reasons, based on the record in the present action, we conclude that the language in both section 558(a) and section 1197.1(a) is broad enough to *unambiguously* include Pedrazzani as a person *other than the corporate employer* subject to the civil penalties awarded by the trial court under those two statutes.[11] Contrary to

___

time, or unreimbursed business expenses. (See §§ 201-204, 210, 227.3, 510, 1194 (as discussed in the text, *ante*), 1194.2, 2802.) Pedrazzani's attempt to apply this general rule to *civil penalties*, however, is contrary to the unambiguous language of the two statutes at issue.

[10] We discuss Plaintiffs' private right of action to recover these civil penalties under PAGA (§ 2699, subd. (a)) at part II.A.3., *post*.

[11] We took judicial notice of six wage citations issued by the Labor Commissioner, exhibits R2-R7. (See pt. II.A.1., *ante*.) In each, the Labor Commissioner issued the citation to *both* a corporation *and* an individual, jointly and severally, for civil penalties

20

Pedrazzani's presentation, neither this appeal nor the application of the relevant statutes (§§ 558(a), 1197.1(a)) to the evidence presented at trial involves the identity, let alone the business structure, of Plaintiffs' employer.

        b.     *The Alter Ego Doctrine Does Not Apply*

We next consider whether there is a rational basis for reconciling or harmonizing the above-discussed unambiguous language of sections 558(a) and 1197.1(a) and the application of the common law alter ego doctrine asserted by Pedrazzani. (*McMillin Albany*, *supra*, 4 Cal.4th at p. 249.) As we explain, because the common law is inapplicable, there is nothing to reconcile or harmonize. Under the common law, an application of the alter ego doctrine allows a court to disregard the corporate entity and treat the corporation's acts as if they were done by the party actually controlling the corporation. (*Capon*, *supra*, 193 Cal.App.4th at p. 357; *Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 538.) Here, the court found Pedrazzani liable for civil penalties under statutes that, on their faces, make him personally responsible for earlier statutory violations that *he* committed or caused to be committed in carrying out an underlying corporate obligation. Very simply, as applied to Pedrazzani, the statutes at issue, sections 558(a) and 1197.1(a), provide for the award of civil penalties against the person who committed the underlying statutory violations.

---

under section 558(a), section 1197.1(a), or both. Based on these citations, we note that the office of the Labor Commissioner believes that sections 558(a) and 1197.1(a) authorize civil penalties against not only the employer, but also a person *other than the employer*.

21

In arguing that the court erred in finding personal liability in the absence of the application of the alter ego doctrine, Pedrazzani misunderstands the potential application of the doctrine.

The alter ego doctrine is an equitable principle that elevates substance over form in order to prevent an inequitable result arising from unjustifiably observing a corporation's separate existence. (*Capon*, *supra*, 193 Cal.App.4th at p. 357.) The doctrine is applied, and a party other than the corporation is liable for the corporation's acts, when recognition of the corporate structure would "sanction a fraud or promote injustice." (*Minifie v. Rowley* (1921) 187 Cal. 481, 487; accord, *Gopal v. Kaiser Foundation Health Plan, Inc.* (2016) 248 Cal.App.4th 425, 432 [alter ego doctrine applies only to avoid "an inequitable result"]; *Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 539 [alter ego doctrine applies if protections of corporate structure would result in "injustice" or "inequity"].) The alter ego doctrine is, under normal circumstances, part of a claim to satisfy a corporate obligation that the claimant must plead and prove when the claim is against a party other than the corporation. (See *Minifie*, at p. 488.)

Here, the unambiguous language of the statutes at issue applies to Pedrazzani as an "other person" subject to the civil penalties. (§§ 558(a), 1197.1(a).) Contrary to Pedrazzani's suggestion, the *inapplicability* of the alter ego doctrine is not a defense to the statutory liability of a party who otherwise qualifies as an "other person" subject to a civil penalty under section 558(a) or section 1197.1(a).

Thus, in the language of *McMillin Albany*, *supra*, 4 Cal.4th at page 249, there is no need to reconcile or harmonize the statutory scheme (§§ 558(a), 1197.1(a)) and the

22

common law (alter ego doctrine) on the record in this case, *because the common law is inapplicable*. Pedrazzani's individual liability did not result from a corporate debt or obligation based on what Pedrazzani describes as "disregarding the corporate form" under the common law. Pedrazzani's liability resulted from a sufficient evidentiary showing (which Pedrazzani does not challenge on appeal) that he qualified as an "other person" liable for the civil penalties under the unambiguous language of the two statutes. Accordingly, the trial court correctly applied the civil penalty statutes to the exclusion of the common law.

Our decision is reinforced by the understanding that, because the wage and hour laws are "remedial," they " ' "are to be given liberal effect to promote the general object sought to be accomplished." ' " (*Mendoza v. Nordstrom, Inc.* (2017) 2 Cal.5th 1074, 1087 [former employees' PAGA claims based on alleged violations of day of rest statutes].) Contrary to this directive, Pedrazzani's suggestion—namely, that section 558(a) or section 1197.1(a) requires an application of the alter ego doctrine before a party other than the corporate employer can be found liable for a civil penalty—would add an issue and additional proof that the Legislature did not require.

In closing, we find further reinforcement for our decision in the 1913 legislation by which the Legislature created the IWC. (Stats. 1913, ch. 324, § 1 et seq., p. 632 et seq.) This uncodified act was intended to regulate the employment of women and minors by creating the IWC to investigate and deal with such employment, including establishment of a minimum wage and a penalty for violations of the act. (*Ibid.*; see *Martinez*, *supra*, 49 Cal.4th at pp. 50, 52-54.) At section 11 of the act, the Legislature

23

prohibited the payment of less than the minimum wage (to be fixed by the IWC):

"[E]very employer or other person who, *either individually or as an officer, agent, or employee of a corporation or other person*, pays or causes to be paid to any such employee a wage less than such minimum, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than fifty dollars, or by imprisonment for not less than thirty days, or by both such fine and imprisonment." (Stats. 1913, ch. 324, § 11, p. 636, italics added.)  We acknowledge that this legislation precedes the statutes at issue in this appeal by more than a half century,[12] but note that its language regarding liability as to someone *other than the employer* is almost identical to that used in section 1197.1(a) and very similar to that used in section 558(a). Significantly, the language in the 1913 act provides for liability "of an officer, agent, or employee *of a corporation*" without any mention of, or requirement for, proof of an alter ego or other basis for piercing the corporate veil.  (Stats. 1913, ch. 324, § 11, p. 636, italics added.)

3.      *Section 2699*

We have just concluded that the unambiguous language of sections 558(a) and 1197.1(a) supports Pedrazzani's liability for the civil penalties set forth in those statutes.

---

12      The Legislature enacted section 558 in 1999 (Stats. 1999, ch. 134, § 14) and section 1197.1 in 1983 (Stats. 1983, ch. 1145, § 1).

However, those statutes only authorize *the Labor Commissioner* to recover the penalties.[13] (§§ 558, subd. (b), 1197.1, subd. (b).)

Nonetheless, under *a different statute*—namely, section 2699, subdivision (a), which is part of PAGA[14]—the trial court awarded Plaintiffs the civil penalties at issue here. The language of this statute allows "an aggrieved employee" to recover such civil penalties, and Pedrazzani does not challenge either whether the statute applies here or whether Plaintiffs are aggrieved employees under the statute.[15] In affirming Plaintiffs' recovery of the civil penalties for the section 558(a) and section 1197.1(a) violations,

---

[13] In their appellate brief, Plaintiffs acknowledge that sections 558 and 1197.1 do not provide for a private right of action to recover the civil penalties authorized under those statutes. (See *Julian v. Mission Community Hospital* (2017) 11 Cal.App.5th 360, 379 [private right of action to enforce a statute exists " ' " 'only if the statutory language or legislative history affirmatively indicates such an intent' " ' " — particularly where, as here, the " ' " 'regulatory statutes provide a comprehensive scheme for enforcement by an administrative agency' " ' "]; *Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1131-1132 (*Thurman*) [discussing private rights of action to enforce IWC wage orders].)

[14] "Notwithstanding any other provision of law, any provision of th[e Labor C]ode that provides for a civil penalty to be assessed and collected by the [LWDA, including the Labor Commissioner] for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3." (§ 2699, subd. (a).)

[15] In this appeal, Pedrazzani challenges only whether he, as "an individual officer of a corporate employer" may be held "personally liable for penalties, attorneys' fees, and costs in a case involving neither any alter ego relationship between the individual and the corporate employer nor any act by the [individual] outside the scope of his agency for the corporation." At part II.A.2., *ante*, we concluded that Pedrazzani may be held liable for certain penalties, and as we explain at part II.B., *post*, Pedrazzani may also be held liable for certain attorney fees and costs.

therefore, we have assumed without deciding that Atempa and Reyes each qualify as an

"aggrieved employee" for purposes of the application of section 2699, subdivision (a).

In any event, we find support for the award, knowing that the purpose of PAGA

"is to supplement enforcement actions by public agencies, which lack adequate resources

to bring all such actions themselves." (*Arias v. Superior Court* (2009) 46 Cal.4th 969,

986; see Stats. 2003, ch. 906, § 1.[16]) " 'Before the PAGA was enacted, an employee

could recover damages, reinstatement, and other appropriate relief *but could not collect

civil penalties*. The [LWDA, through the Labor Commissioner] . . . collected them. *The

PAGA changed that*.' " (*Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562,

578 (*Villacres*), italics added.) "In PAGA, the Legislature created an enforcement

mechanism for aggrieved employees to file representative actions to recover penalties in

cases in which there is no private cause of action as an alternative to enforcement by the

---

[16] In enacting PAGA, the Legislature found and declared as follows:
"(a) Adequate financing of essential labor law enforcement functions is necessary to achieve maximum compliance with state labor laws in the underground economy and to ensure an effective disincentive for employers to engage in unlawful and anticompetitive business practices.
"(b) Although innovative labor law education programs and self-policing efforts by industry watchdog groups may have some success in educating some employers about their obligations under state labor laws, in other cases the only meaningful deterrent to unlawful conduct is the vigorous assessment and collection of civil penalties as provided in the Labor Code.
"(c) Staffing levels for state labor law enforcement agencies have, in general, declined over the last decade and are likely to fail to keep up with the growth of the labor market in the future.
"(d) It is therefore in the public interest to provide that civil penalties for violations of the Labor Code may also be assessed and collected by aggrieved employees acting as private attorneys general, while also ensuring that state labor law enforcement agencies' enforcement actions have primacy over any private enforcement efforts undertaken pursuant to this act." (Stats. 2003, ch. 906, § 1.)

26

Labor Commissioner." (*Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 650, superseded in part on another issue by statute.) In short, under section 2699, subdivision (a), "an 'aggrieved employee' may bring a civil action . . . to recover civil penalties for Labor Code violations." (*Arias*, at p. 980; accord, *Thurman*, *supra*, 203 Cal.App.4th at p. 1126 ["Section 2699, subdivision (a) . . . 'permits aggrieved employees to recover civil penalties that previously could be collected only by LWDA' "].)

Where, as here, aggrieved employees recover civil penalties under PAGA, the penalties "shall be distributed as follows: 75 percent to the [LWDA] . . . and 25 percent to the aggrieved employees." (§ 2699, subd. (i).) Consistent with this subdivision, the court ordered that the $27,101 in *section 1197.1(a) civil penalties* be distributed "75% . . . to the State of California and 25% . . . to the aggrieved employees in proportion to the violations they each suffered." However, with regard to the *section 558(a) civil penalties*, the court ordered that Atempa was entitled to the full $1,937 associated with his overtime claims, and Reyes was entitled to the full $2,036 associated with her overtime claims—with no recognition of the distribution to the LWDA as required under section 2699, subdivision (i). The court requested supplemental briefing on this issue.

Pedrazzani argued that each of the section 558(a) awards should have been distributed 75 percent to the LWDA and 25 percent to the individual aggrieved employee.

Plaintiffs argued that the trial court properly awarded them 100 percent of the section 558(a) penalties. They explained: Of the $1,937 in civil penalties based on minimum wage violations to Atempa, $1,587 "was allocated to *unpaid wages*" (italics

27

added); of the $2,036 in civil penalties based on minimum wage violations to Reyes, $1,587 "was allocated to *unpaid wages*" (italics added); and section 558(a)(3) directs that "[*w*]*ages* recovered pursuant to this section shall be paid to the affected employee" (italics added).[17]  In response to questioning at oral argument, Plaintiffs' counsel clarified his clients' position.  He advised that, as the judgment reads, both of the section 558(a) awards here were comprised entirely of *civil penalties*; in addition, in response to a question from the bench, he agreed that, "under th[e]se circumstances," the section 558(a) awards would be "a 25-75 split."

Thus, based on the positions of all parties to the appeal, we consider both of the section 558(a) awards in the judgment to be *civil penalties* subject to "the general rule that civil penalties recovered in a PAGA action are distributed 75 percent to the [LWDA] and 25 percent to the aggrieved employees (§ 2699, subd. (i))."  (*Thurman*, *supra*, 203 Cal.App.4th at p. 1145.)  Accordingly, we will modify the judgment to provide that the section 558(a) civil penalties awarded to Atempa and Reyes be distributed 75 percent to the LWDA and 25 percent to the aggrieved employee according to section 2699, subdivision (i).

B.      *The Trial Court Did Not Err in Ruling That Pedrazzani Is Liable for Attorney Fees and Costs*

In a postjudgment order, the trial court ruled that Plaintiffs could recover attorney fees and costs from Pedrazzani under section 2699, subdivision (g).  Section 2699, which

_____

[17]      Plaintiffs did not suggest how the remainder of the section 558(a) awards— i.e., $350 to Atempa and $800 to Reyes, which Plaintiffs tell us were "allocated to [section 558], subdivision (a)(1)-(2) penalties"—should have been distributed.

is part of PAGA, provides in subdivision (g)(1): "Any employee who prevails in any [PAGA] action shall be entitled to an award of reasonable attorney's fees and costs . . . ." Pedrazzani's challenge to Plaintiffs' statutory entitlement to attorney fees is a legal issue that we review de novo.[18] (*Shames v. Utility Consumers' Action Network* (2017) 13 Cal.App.5th 29, 38.)

Under the unambiguous language of section 2699, subdivision (g)(1), "[i]f an employee prevails in a PAGA action, he or she is entitled to an award of reasonable attorney fees and costs." (*Villacres*, *supra*, 189 Cal.App.4th at p. 578.) Because this statute provides that the prevailing employee " 'shall be entitled' " to recover attorney fees, "[such] an award is a matter of right." (*Harrington v. Payroll Entertainment Services, Inc.* (2008) 160 Cal.App.4th 589, 594 (*Harrington*).) Here, of course, Plaintiffs prevailed on their PAGA claims for awards of civil penalties against Pedrazzani.

In the trial court, in his opposition to Plaintiffs' attorneys fee motion, Pedrazzani conceded that *Harrington* "held that the plaintiff was entitled to an award of fees" under section 2699. On appeal, Pedrazzani fails to acknowledge this concession, not once mentioning *Harrington* or section 2699, subdivision (g)(1). Instead, Pedrazzani relies on *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244 (*Kirby*)—a case that he characterizes as arising from "a related setting." We disagree; the "setting" in *Kirby* is not related to the present case.

---

18     Pedrazzani does not challenge either the amount awarded or the joint and several nature of the award.

29

*Kirby* involved statutorily mandated rest breaks under section 226.7, and the issue on appeal was whether the prevailing party was entitled to an award of attorney fees. (*Kirby*, *supra*, 53 Cal.4th at p. 1248.) Section 226.7 does not contain an attorney fees provision, and in *Kirby* the Supreme Court ruled that certain fee shifting provisions in *other statutes*—for recovery of unpaid wages and benefits (§§ 1194, 218.5)—did not apply. (*Kirby*, at pp. 1254-1255 [§ 1194], 1259 [§ 218.5].) In contrast, the present case involves a statutory award of attorney fees under PAGA (§ 2699, subd. (g)(1)) following the successful disposition of claims for civil penalties for overtime pay and minimum wage violations (§§ 558, 1197.1) under PAGA (§ 2699, subd. (a)).

Section 2699, subdivision (g)(1) authorizes an award of attorney fees and costs to Plaintiffs on this record, and Pedrazzani did not meet his burden of establishing that the trial court erred in so ruling.[19]

---

[19] In their brief, Plaintiffs state that, if they prevail in this appeal, they are also "entitled to recover" and "should recover" their attorney fees and costs on appeal. We agree. Statutory authorization for the recovery of attorney fees incurred in the trial court necessarily includes attorney fees on appeal, unless the statute expressly provides otherwise. (*Conservatorship of McQueen* (2014) 59 Cal.4th 602, 610-611; *Morcos v. Board of Retirement* (1990) 51 Cal.3d 924, 928.) The statute at issue here, section 2699, subdivision (g)(1), contains no such express provision otherwise. Accordingly, after issuance of the remittitur and a sufficient showing in the superior court, Plaintiffs are entitled to an award of reasonable attorney fees and costs on appeal under section 2699, subdivision (g)(1).

C.      *The Trial Court Did Not Err in Ruling That Pedrazzani Is Liable for Postjudgment Interest*

As part of the judgment, the superior court ruled that Plaintiffs are entitled to recover from Pedrazzani postjudgment interest on the civil penalties awarded pursuant to sections 558(a) and 1197.1(a).

In his appellate briefing, Pedrazzani refers to both prejudgment and postjudgment interest without specifying whether the challenge is to prejudgment interest, postjudgment interest, or both.  Although Pedrazzani cites statutes (§§ 1194 & 1194.3) that deal exclusively with *prejudgment interest on wages*, the judgment here does not require Pedrazzani to pay any wages, any prejudgment interest, or any prejudgment interest on wages.

As to Plaintiffs' entitlement to *postjudgment interest on the civil penalties*, Pedrazzani did not present any argument or legal authorities, as expressly required by California Rules of Court, rule 8.204(a)(1)(B).  Thus, Pedrazzani has forfeited appellate court consideration of the issue of Plaintiffs' entitlement to postjudgment interest.  (*Estate of Cairns* (2010) 188 Cal.App.4th 937, 949 (*Cairns*).)  In any event, as a matter of statutory law, postjudgment interest accrues on the unpaid principal amount of the judgment from the date of entry of judgment.  (Code Civ. Proc., § 685.010, subd. (a).)

D.      *The Trial Court Did Not Err in Ruling That Pedrazzani Is Liable for Costs*

As part of the judgment, the superior court ruled that Plaintiffs are entitled to recover from Pedrazzani their costs, in an amount to be determined by the court. Although Pedrazzani tells us that Plaintiffs filed a memorandum of costs, that Pedrazzani

filed a motion to tax costs, and that the trial court held hearings on the issue of costs, Pedrazzani does not tell us what costs, if any, the court ultimately awarded or taxed. Consistently, Pedrazzani does not present any argument or legal authorities regarding Plaintiffs' entitlement to costs, as required by California Rules of Court, rule 8.204(a)(1)(B).

Accordingly, Pedrazzani has forfeited appellate court consideration of the issue of Plaintiffs' entitlement to costs. (*Cairns*, *supra*, 188 Cal.App.4th at p. 949.) In any event, as a matter of statutory law, by prevailing on their claims for civil penalties under the Labor Code, like attorney fees, section 2699 expressly authorizes an award of reasonable costs: "Any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees *and costs* . . . ." (§ 2699, subd. (g)(1), italics added; accord, *Villacres*, *supra*, 189 Cal.App.4th at p. 578 [successful PAGA plaintiff "entitled to an award of reasonable . . . costs" under § 2699, subd. (g)(1)].)

III.

DISPOSITION

Those portions of the judgment awarding Atempa $1,937 in section 558(a) civil penalties against Pedrazzani and awarding Reyes $2,036 in section 558(a) civil penalties against Pedrazzani are modified to provide that those amounts be distributed 75 percent to the LWDA and 25 percent to the aggrieved employee according to section 2699, subdivision (i).  As modified, the judgment against Pedrazzani is affirmed.

The postjudgment order awarding Plaintiffs attorney fees against Pedrazzani is affirmed.

Plaintiffs are entitled to their costs on appeal from Pedrazzani.  (Cal. Rules of Court, rule 8.278(a)(2).)


IRION, J.

WE CONCUR:


NARES, Acting P. J.


HALLER, J.

33