Filed 11/21/24  P. v. Soto CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D083709 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FSB18001451) |
| ALBERT SOTO, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Bernardino County, Alexander R. Martinez, Judge.  Affirmed.

Paul Stubb, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, Junichi P. Semitsu, and Monique Myers, Deputy Attorneys General, for Plaintiff and Respondent.

MEMORANDUM OPINION

Albert Soto[1] appeals an order denying his motion to vacate a conviction under Penal Code section 1473.7. Soto claims the court erred because he (1) did not meaningfully understand the immigration consequences of the plea leading to his conviction and (2) was thus prejudiced because, had he understood, he would not have agreed to plead guilty.

We find this matter appropriately resolved by memorandum opinion and affirm. (See generally *People v. Garcia* (2002) 97 Cal.App.4th 847.)

I.

In 2019, Soto was sentenced to two years in prison after he pled guilty to assaulting Yesenia A.—the mother of his two children—with a firearm and, in a separate case, driving under the influence of alcohol. As part of Soto's plea deal, the court dismissed three misdemeanor charges—including domestic violence against Yesenia—and another assault with a firearm charge—also against Yesenia. Because of his accrued custody credits, Soto was released from prison four months later.

Upon his release from prison, immigration officers took Soto back into custody and deported him. Soto had been deported twice before in connection with lesser crimes, including an arrest for misdemeanor domestic violence against Yesenia. He reentered without authorization after both deportations.

In 2023, Soto filed a section 1473.7 motion to vacate his assault with a firearm conviction. In his supporting declaration, Soto claimed that while he knew his plea could have led to deportation, he was not aware he would be permanently barred from reentry. According to Soto, had he known he would be permanently barred, he would have "taken [his] chances" at trial because

---

[1] Although Soto introduced himself as Alberto Soto Valenzuela at the motion hearing, we refer to him as Albert Soto in conformity with the pronouncement of judgment.

he believed the evidence was "weak" and based on "[j]ust [Yesenia's] word." He noted he had lived in the United States for twenty years, since childhood, and at the time of his plea he wished to stay with Yesenia and their two children. Soto also claimed that, since his plea, he had two more children with Yesenia and is now married with three stepchildren, all of whom live in the United States.

At the motion hearing, Soto testified he would not have accepted the plea had he known the immigration consequences because his whole family lives in the United States. The court, however, found Soto's claim that he never discussed immigration consequences with his attorney not credible, especially given his prior criminal history and associated deportations. In contrast, the court found credible Soto's former attorney's testimony that he followed his normal practice with Soto, which included asking about immigration status, reading each paragraph of the plea, and asking if the client had any questions. The court also found credible the attorney's testimony that he knew Soto had been deported previously and he discussed the immigration consequences of the plea with Soto because he "specifically remember[ed] that the immigration status of [Soto] was a factor of importance."

Based on Soto's prior deportations, his former attorney's testimony, and the statements on his plea form, the court found no error occurred and denied the motion to vacate the conviction. The court also found that even if there was error, Soto suffered no prejudice.

II.

Under section 1473.7, a court may vacate a conviction if the moving party shows, by a preponderance of the evidence, the conviction was "legally invalid due to prejudicial error damaging the moving party's ability to

3

meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences" of the underlying plea. (Pen. Code, § 1473.7, subds. (a)(1) & (e)(1).)

We independently review an order on a motion under section 1473.7. (*People v. Espinoza* (2023) 14 Cal.5th 311, 319.) When applying independent review, we may not second-guess the trial court's factual findings or credibility determinations based on live testimony. (*People v. Vivar* (2021) 11 Cal.5th 510, 527–528.) We apply our own independent judgment, however, to determine if the facts establish prejudicial error. (*Id.* at p. 528.)

A.

Soto argues three circumstances show he did not understand his plea would result in a permanent bar to reentry: (1) his attorney at the time "did not give any evidence suggesting he informed" Soto the plea would result in a bar to reentry; (2) the plea form was ambiguous; and (3) the plea-taking judge provided no input regarding immigration consequences. Because we conclude Soto failed to carry his burden of proof as to the first circumstance, we need not consider the other two.[2]

Soto must provide objective evidence beyond self-serving statements to corroborate that his attorney's advice was inadequate or improper. (*People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 664.) Other than his own discredited testimony, however, Soto points to none. He thus falls short of his burden to prove error. The trial court found it "incredulous" that during his eight months of custody Soto and his attorney never discussed immigration consequences. Importantly, the court credited Soto's former attorney's

---

2    Soto requests we take judicial notice of the reporter's transcript of his plea hearing, which was not before the trial court. Because the transcript is unnecessary to resolve this appeal, we deny Soto's request. (*Atempa v. Pedrazzani* (2018) 27 Cal.App.5th 809, 819.)

4

testimony that Soto's immigration status was an important factor and they discussed the immigration consequences of his plea. Without credible evidence showing otherwise, we cannot conclude Soto's attorney improperly or inadequately advised him.

Based on the trial court's credibility findings about Soto and his attorney discussing the plea's immigration consequences, and the resulting deference given on appeal, we conclude Soto has not shown he misunderstood or was unaware of the immigration consequences of his plea, which included a permanent bar to reentry.

## B.

Although we conclude no error occurred in Soto's plea, we assess his claim of prejudice anyway. (*People v. Diaz* (2022) 76 Cal.App.5th 102, 115.) A section 1473.7 error is prejudicial only if, based on the totality of the circumstances, the party shows there is a reasonable probability he or she would have rejected the plea had he or she understood its immigration consequences. (*Espinoza*, 14 Cal.5th at p. 320.) Relevant factors include "'the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible.'" (*Ibid.*) Also relevant is the "defendant's probability of obtaining a more favorable outcome if he [or she] had rejected the plea, as well as the difference between the bargained-for term and the likely term if he [or she] were convicted at trial." (*Ibid.*)

Soto argues three circumstances show he would not have accepted the plea had he understood the immigration consequences. He claims he (1) has strong ties to the United States, (2) may have been able to obtain a better result at trial, and, even if not, (3) would have figuratively thrown a "Hail

5

Mary" by going to trial anyway. (*People v. Mejia* (2019) 36 Cal.App.5th 859, 871.) Soto must corroborate his factual assertions with objective evidence. (*Espinoza*, 14 Cal.5th at p. 321.)

1.

At the time of his plea, Soto had lived in the United States for almost 20 years—since childhood. While the length of his residency is important, it is only one of several factors we weigh to determine the strength a party's ties to the United States. (*Espinoza*, 14 Cal.5th at p. 321.)

As to other factors, Soto points to his two children, former girlfriend Yesenia, brothers, and parents who all lived in the United States. But other than his self-serving declaration and testimony, Soto provides no corroborating evidence of the strength of those ties, such as financial obligations or caretaking duties. (*Espinoza*, 14 Cal.5th at p. 323.) This stands in contrast to *Espinoza*, where the defendant provided "30 letters from family, friends, community members, clients, and employers documenting his family ties, community connections, and work history." (*Id.* at p. 317.)

Soto also claims he has since married and now has three stepchildren and two more biological children in the United States. We do not consider these ties, however, because they did not exist at the time of his plea. (*People v. Lopez* (2022) 83 Cal.App.5th 698, 713–714.)

Further, as to Yesenia, the strength of Soto's claimed tie is undercut because three of the crimes implicated in his plea bargain involved violence against her. (See *People v. Bravo* (2021) 69 Cal.App.5th 1063, 1077.)

On this record and when considered with all factors, despite his length of time in the United States, we conclude Soto's ties are insufficient to show a reasonable probability he would have rejected his plea.

2.

Soto's second argument, that he may have obtained a better result at trial, does not strengthen his claim of prejudice. Again, Soto relies only on his testimony and declaration, which assert his belief the evidence against him was "weak" and based on "[j]ust [Yesenia's] word." Even if we accept this as true by ignoring the other witness and evidence in the record, Soto fails to account for the additional assault with a firearm conviction and multiple misdemeanor convictions he would have risked had he rejected the plea and gone to trial. We therefore agree with the People that because conviction on one or a combination of those crimes would have resulted in the exact same immigration consequences, as well as a possible sentence of more than double his plea offer, Soto could not have reasonably expected a better result at trial.

Moreover, Soto has offered no evidence, and we find none in the record, that the People would have agreed to an immigration-neutral disposition had he rejected the plea. (*People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1136 [defendant failed "to identify any 'immigration-neutral disposition to which the prosecutor was reasonably likely to agree'"].)

3.

Finally, Soto claims he would have tried a "Hail Mary" by going to trial, even though it was a "long shot attempt." But once again, Soto relies only on his say-so without any objective corroborating evidence.

And in any event, it is not enough; Soto must show avoiding a permanent ban was "*the* deciding factor" such that he would have rejected the favorable plea deal despite poor odds at trial. (*Lopez*, 83 Cal.App.5th at p. 715.) Soto has made no such showing.

We thus conclude, based on the totality of the circumstances, Soto has fallen short of his burden to prove he would have rejected the plea despite knowing of the immigration consequences.

III.

We affirm.

CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


KELETY, J.

8