Filed 10/20/22  Mendez-Villegas v. Duarte CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TERESA E. MENDEZ-VILLEGAS et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> JOHN DUARTE, <br><br> Defendant and Respondent. | F082174 <br><br> (Super. Ct. No. 2014212) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Stacy P. Speiller, Judge.

Mallison & Martinez, Stan S. Mallison, Hector R. Martinez, Liliana Garcia and Daniel C. Keller for Plaintiffs and Appellants.

Law Offices of Brunn & Flynn, Gerald E. Brunn and Mahanvir S. Sahota for Defendant and Respondent.

-ooOoo-

Former employees of Duarte Nursery, Inc. (DNI) filed this action against DNI, John Duarte (Duarte), and other individuals seeking civil penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab. Code,[1] § 2698 et seq.). Teresa E. Mendez-Villegas, Maria Navarro, Loyda Aguilar, and Olimpia Cano de Peral (collectively, Plaintiffs) allege Duarte was personally liable under PAGA because he was a person who violated or caused to be violated various provisions of the Labor Code.

Duarte, an owner, president and chief executive officer (CEO) of DNI, moved for summary judgment, contending he lacked sufficient personal involvement to have caused the alleged violations. The trial court granted his motion after concluding there was no evidence in the record that Duarte was individually responsible for violations of sections 558 or 1197.1. Plaintiffs appealed.

Whether Duarte was a "person acting on behalf of an employer who violate[d], or cause[d] to be violated," California's wage and hours law for purposes of section 558 presents this court with a question of statutory construction. We conclude an officer of a corporate employer does not cause a violation merely by being an officer. Instead, the officer must have engaged in some affirmative conduct beyond his or her status as an officer. In particular, the officer must (1) have been personally involved in the purported violation or (2) have had sufficient participation in managing or overseeing the activities of those persons directly responsible for the violation that such participation can be found to have contributed to the violation. (See *Usher v. White* (2021) 64 Cal.App.5th 883, 896–897 (*Usher*).)

Applying this statutory interpretation to the evidence about the conduct attributable to Duarte, we conclude Duarte carried his initial burden of showing he was not personally involved in the purported violations and lacked sufficient participation in the management or oversight of those directly responsible for the violations to be deemed

---

[1]    Undesignated statutory references are to the Labor Code.

to have contributed or caused the violations.  The evidence relied upon by Plaintiffs is insufficient to establish the existence of a triable issue of material fact.

We therefore affirm the judgment.

**FACTS AND PROCEEDINGS**

DNI operates a greenhouse in Hughson and farms other properties in Stanislaus County.  Duarte serves as its CEO, and his brother, Jeff Duarte (Jeff), serves as another executive officer.  Collectively, they perform most of the decisionmaking at DNI.

Plaintiffs reside in Stanislaus County and were employed as non-exempt employees by DNI until 2014.

*The Pleadings*

In April 2015, Plaintiffs filed a class action complaint setting forth seven causes of action[2] against DNI for violations of the Labor Code and the unfair competition law (Bus. & Prof. Code, § 17200 et. seq.).  An eighth cause of action asserted a PAGA claim for civil penalties against DNI and five individuals:  (1) Duarte; (2) Michael Duarte; (3) Jeff; (4) Patricia Lopez; and (5) Engracia Lopez.

In August 2015, Plaintiffs filed their first amended complaint (FAC).  It sets forth the same causes of action and removes Michael Duarte as a defendant.

The FAC alleges DNI "has employed Plaintiffs" and refers to DNI as the " 'EMPLOYER DEFENDANT.' "  The FAC refers to the individual defendants as the

---

[2]      The first six causes of action against DNI were (1) failure to pay minimum wage (Lab. Code, §§ 1197, 1194, subd. (a), 1194.2; Industrial Welfare Commission (IWC) wage orders Nos. 13-2001, 14-2001, Cal. Code Regs., tit. 8, §§ 11130, 11140); (2) failure to provide rest periods or pay additional wages in lieu thereof (Lab. Code, §§ 226.7, 512; IWC wage orders Nos. 13-2001, 14-2001, Cal. Code Regs., tit. 8, §§ 11130, 11140); (3) failure to provide meal periods or pay additional wages in lieu thereof (Lab. Code, §§ 226.7, 512; IWC wage orders Nos. 13-2001, 14-2001, Cal. Code Regs., tit. 8, §§ 11130, 11140); (4) failure to indemnify employees for all necessary expenditures or losses incurred (Lab. Code, § 2802; IWC wage orders Nos. 13-2001, 14-2001, Cal. Code Regs., tit. 8, §§ 11130, 11140); (5) knowing and intentional failure to comply with itemized employee wage statement provisions (Lab. Code, §§ 226, subd. (b), 1174, 1175); and (6) failure to pay all wages owed upon termination or resignation (Lab. Code, §§ 201, 202, 203).

3.

"PAGA DEFENDANTS" and alleges they are the persons who violated or caused to be violated sections 558 and 1197.1, and IWC wage orders. The FAC explains, "The core violations PLAINTIFFS allege against the EMPLOYER DEFENDANT [DNI] are: (1) failure to pay all minimum wages owed; … (3) failure to provide rest or meal periods (or pay the statutory additional wages due); (4) failure to reimburse necessary expenses incurred; … and (6) failure to pay all wages owed upon termination or resignation," but that "[t]he PAGA DEFENDANTS caused the violations at issue and benefitted financially and/or professionally from these violations."

The FAC alleges Plaintiffs were all employed as non-exempt employees by DNI until 2014 and the individual defendants, including Duarte, "had complete authority over all labor policies and/or practices, including those resulting in violations as described in this complaint, and they have actively violated or caused the violations alleged herein."

Relevant to the PAGA claim, the FAC asserts:

> "… PAGA Defendants JEFF [], [] DUARTE, PATRICIA LOPEZ, ENGRACIA LOPEZ are individually liable for the violations herein alleged under PAGA and through, among other provisions, [section] 558, which provides for individual liability for all persons who violate or cause to be violated provisions of the California Labor Code and California Regulations, including IWC wage orders."

The FAC describes "unlawful practices and policies" that "DEFENDANTS maintained and enforced," including:

> "a.   forcing … PLAINTIFFS, to work 'off the clock' time without compensation, including but not limited to time spent donning an[d] doffing personal protective equipment, washing hands, walking to and from the work areas to designated break areas during meal periods, addressing human resources issues, and waiting in line to clock in and/or out during normal work hours, meal periods and rest periods as required by DEEFENDANTS and under their control …;
>
> "b.   failing to compensate PLAINTIFFS for all hours worked, including but not limited to hours worked by PLAINTIFFS that were neither

4.

included in DEFENDANTS' piece-rate compensation system, nor compensated at PLAINTIFFS' hourly rate …;

"c.     failing to provide … PLAINTIFFS, rest periods … including … failing to provide net ten (10) minute rest periods because of time spent donning an[d] doffing personal protective equipment, washing hands, and/or walking to and from the work areas to designated break areas …;

"d.     failing to provide … PLAINTIFFS, meal periods … including … failing to provide net thirty (30) minute meal periods because of time spent donning an[d] doffing personal protective equipment, washing hands, and/or walking to and from the work areas to designated break areas, and waiting in line to clock in and/or out …;  [¶] … [¶]

"g.     failing to reimburse … PLAINTIFFS, for expenses incurred for providing their own personal protective equipment, uniforms and rubber boots, in violation of California laws and public policy .…"

In December 2015, defendants filed an amended answer that included a general denial and 23 affirmative defenses.

*Summary Judgment Motion*

In August 2020, Duarte moved for summary judgment on the PAGA claim, contending the that claim against him had no merit.  Duarte asserted he was not responsible for any Labor Code violations that allegedly damaged Plaintiffs.  Duarte noted he was not the actual employer and argued the fact that he is the president and part owner of DNI is not enough to confer liability under PAGA.

In addition, Patricia Lopez filed a separate summary judgment motion.  Her moving papers asserted she is "responsible for shifting employees from one department to another" and "follows the work schedules put together by the Human Resources and Safety departments."  Engracia Lopez also filed a separate summary judgment motion and her papers asserted she "is a mid-level supervisor who oversees about seventeen (17) employees," she does not set meal and rest period schedules, the schedules are given

5.

to her by her superiors, she informs her crew when to take lunches and breaks, and she has nothing to do with setting wages or implementing payroll policies.

## 1. Duarte's Undisputed Material Facts (UMFs)

Duarte's separate statement asserted the following as material facts that were undisputed:

**UMF 1 –** "[] DUARTE has been president and chief executive officer for [DNI] since 2008."

**UMF 2 –** "[] DUARTE's duties involve coordinating different departments such as sales, shipping, production, marketing, customer interaction, and finance."

**UMF 3 –** "[] DUARTE['s] only interactions with employees are with department heads and managers."

**UMF 4 –** "[] DUARTE is only generally involved in the process of determining the medium wage for employees and benefits."

**UMF 5 –** "[] DUARTE is not responsible for setting or payment of wages to employees such as [P]laintiffs."

**UMF 6 –** "[] DUARTE is not involved with providing meal or rest periods for employees."

**UMF 7 –** "[] DUARTE is not involved with setting work schedules for employees such as [P]laintiffs."

**UMF 8 –** "Plaintiffs have stated that it was defendant DNI that set their wages."

**UMF 9 –** "Plaintiffs have not provided any evidence of wage and hour violations by [] DUARTE that are actionable under PAGA."

**UMF 10 –** "Plaintiffs sued [] DUARTE simply because they believe he is the owner of [DNI]."

## 2.    Evidence in Support of Duarte's UMFs

Duarte supported his UMFs with references to his deposition testimony. His supporting evidence also included deposition testimony from plaintiffs Aguilar and Navarro.

Duarte testified, on any given day at DNI, he "touch[es] base with all the leads" of various departments to "find out what's going on in a general way whether it's sales, orders coming in, shipping, production, marketing, [or] finance." He also engages in customer interaction such as discussing "[h]ow to optimize [DNI's] products in their field, in their performance."

Duarte stated he works with "some direct employees" of DNI including "department heads and managers." He could not specify how DNI hires "general ag workers" because he "d[oes]n't participate" in that decision. He acknowledged participating in discussions regarding "rates of pay" for "specific management level employees."

Duarte works with Jeff and controller Greg Stoll in setting payroll policy at a "high level" at DNI. He described this process as "an annual look over of what we [a]re to do in terms of overall wages increases … where the minimum wage lie is."

Regarding pay for nonsalaried employees, Duarte testified:

> "If minimum wage[] has gone up a dollar—we'll say hey minimum wage has gone up a dollar. Are [*sic*] going to go up a dollar? Because we might be 50 cents or a dollar off minimum wage at our hiring start rate, so generally do some high level—yeah everybody hourly is going up a dollar each other or, you know, 50 cents or—so we'll do a high level overview of what wages are going to do in a general way."

Duarte testified he received questions about wages from "[a]nybody who wants to talk to me." He qualified this testimony by stating that "I don't do wages," and that he would "let Jeff know I met with them and he'll work [with] Charlie [Gonzalez] and let him know that we got some feedback at my level and they can work through it and see

7.

what's—what they want to do."  Duarte stated Charlie Gonzalez works under Jeff and identified Gonzalez as a "labor and safety manager" and a member of DNI's "compliance people."

Duarte denied responsibility for setting or paying wages for DNI's line workers because he does not "make decisions" regarding pay for "the hundreds of direct labor employees" that compose DNI's work crews.

Duarte also disclaimed responsibility for setting work schedules.  According to Duarte, he does not "[d]etermin[e] when a particular crew starts.  When its' break period is.  When its' lunch period is.  Whether a crew needs to work on Saturdays or not.  Whether a crew needs to work overtime or not."  Similarly, Duarte denied "[p]roviding the specific timeframes for" meal and rest breaks for employees.  He explained:

> "I obviously need to make sure that meal and rest periods are provided, but exactly when they're provided and when they are scheduled in the day is not something I get involved with directly."

Duarte also relied on the deposition testimony of plaintiffs Aguilar and Navarro.  When asked who set wages in the nursery, Aguilar stated:  "The company."  Navarro testified that she did not have any documents supporting her contention that Duarte violated the Labor Code; she was unaware of any such documents; and she knew Duarte as the "owner" of DNI but she never spoke with him during her tenure at DNI.  Additionally, the following colloquy occurred:

> "[Duarte's counsel:]  Do you believe, as you sit here today, that [] Duarte somehow violated the Labor Code?
>
> "[Navarro:]  Yes.  [¶] … [¶]
>
> "[Duarte's counsel:]  In what way?
>
> "[Navarro's counsel:]  Objection, calls for speculation, legal conclusion.
>
> "[Navarro:]  They didn't pay us the hours that we worked."

8.

### 3. Plaintiffs' Opposition to Motion and Response to UMFs

Plaintiffs opposed Duarte's summary judgment motion on the grounds his responsibility "for setting employee wages and fail[ing] to provide" rest periods "create[d] liability under California Labor Code sections 558 and 1197.1." Plaintiffs asserted that in *Atempa v. Pedrazzani* (2018) 27 Cal.App.5th 809 (*Atempa*) the court "decided that any person 'acting on behalf of an employer' who violates or causes a violation of the state's applicable minimum wage laws may be held personally liable for civil penalties under Labor Code section 558."

Plaintiffs' separate statement disputed nine of Duarte's UMFs and agreed he had been CEO of DNI since 2008. Specifically, Plaintiffs responded to certain of Duarte's UMFs as follows:

**UMFs 2 and 7** – Plaintiffs disputed these facts, noting Duarte testified that he is "responsible for 'whatever happens' in [DNI]"; he is president and CEO and is responsible for the company; "[m]ost of the decision-making authority" at DNI rests with Duarte and Jeff; and Duarte has the authority to hire and fire employees. With respect to UMF 7, Plaintiffs also stated Duarte "adjusts employee schedules."

**UMF 3** – Plaintiffs disputed this fact because Duarte "testified to communicating with large groups of employees" and he "attend[ed] the annual meeting for nursery workers to inform them what the payroll policies will be."

**UMFs 4 and 5** – Plaintiffs asserted Duarte "sets wages for employees of [DNI]" and "determines what the rates of pay will be for nursery workers." With respect to UMF 5, Plaintiffs also responded that "Duarte testified with regards to the wages of nursery workers, 'we try to be above minimum wage.' "

**UMF 6** – Plaintiffs claimed Duarte bore responsibility for "making sure [DNI] complies with rest period laws" and that he admitted " 'I obviously need to make sure that meal and rest periods are provided.' "

**UMF 8** – Plaintiffs asserted Duarte misrepresented Aguilar's testimony and it did "not establish that <u>all</u> four Plaintiffs" testified that DNI " 'set their wages.' "

**UMFs 9 and 10** – Plaintiffs disputed these UMFs and characterized them as legal conclusions and argument, not facts.

### 4. Evidence in Support of Plaintiffs' Separate Statement

Plaintiffs' evidence in support of their separate statement included deposition testimony from Duarte and Jeff.

Regarding UMF 2, Duarte described DNI as a "family operation [where] most of our decision making is based on Jeff and I at the executive level." He stated his "broad general responsibility" meant "you're responsible for whatever—whatever happens" at DNI. Later, he reiterated "everything about [DNI] is my responsibility."

Jeff testified at his deposition that Duarte had the authority to hire and fire DNI employees.

In connection with UMF 3, Duarte testified DNI's goal is to be known as a "preferred employer." Duarte explained:

> "Usually if I talk to a large group of employees, you know, just as an owner and showing them that we're engaged and accessible. I'll say we want to be respectful, we want to be safe, and we want to be fair. And we want everybody at [DNI] treating each other—concerned with each other's safety, make them feel respected, and assure that we're treating everyone fairly."

Duarte stated he participates in meetings with nursery workers. Specifically, he testified DNI annually conducts "one big meeting where we talk about bonus checks, what the payroll policies will be." Duarte explained his brother Jeff "does most of the talking about what our employment practices are" whereas Duarte provides "an overview of where [DNI] is at."

With respect to UMFs 4 and 5, Plaintiffs focused on Duarte's testimony that "we'll do a high level overview of what wages are going to do in a general way"; that line

workers at DNI usually earn "above minimum wage"; and DNI "tr[ies] to be above minimum wage." In later testimony, Duarte stated:

> "Well I'm obviously responsible to see the people get paid. But determining what exactly rate of pay [*sic*] an individual gets at that level, I was not directly responsible for setting those wages that would be paid."

Regarding UMF 6, Duarte testified he knew of a rest period policy and DNI's "compliance people" scheduled rest periods. He identified Charlie Gonzalez as the "main person" who "adjust[ed] the work schedules for the employees." Duarte stated:

> "If they arrive at 5:30 a.m. because it's, you know, mid-year and they want to work early and get home early, he'll have to make sure that the break periods and lunch periods line up appropriately so that they have the right lunch break to go with the 5:30 a.m. start. If later in the year we go to a 6:00 or 7:00 a.m. start, then those break and lunch periods have to be adjusted again."

*Trial Court's Orders*

On October 27, 2020, the trial court heard argument on Duarte's summary judgment motion. Plaintiffs' counsel recited the language of sections 558 and 1197.1 and Wage Order No. 14 and asserted the "[L]egislature extended the reach of [s]ection[s] 558 and 1197.1 under PAGA so that plaintiffs may hold individuals who may try to hide behind the corporate titles directly responsible." Plaintiffs' counsel argued: "A reasonable trier of fact would likely agree … that an individual who received notice of the PAGA action and continued to ratify the unlawful conduct can be held liable under [s]ection[s] 558 and 1197.1 for minimum wage and rest and meal period violations."

The trial court granted the motion one day after the hearing. Its written order stated:

> "Duarte has met his initial burden of proof on this motion for summary judgment, and Plaintiffs have failed to provide evidence raising a genuine issue of material fact as to Defendant Duarte's liability for their damages. There is no evidence in the record that Defendant Duarte is individually

11.

responsible for violations of Labor Code sections 558 or 1197.1. While Defendant Duarte is responsible for setting wages at the highest level, he has no involvement in determining whether the time needed to punch a time clock or doff protective equipment should be paid or not. Nor does he instruct individual employees regarding when their breaks start or end. While he acknowledges that he has responsibility for making sure that rest breaks and lunch periods are provided to employees in the first instance, there is no evidence that he is involved in granular decisions regarding when breaks begin and when they end. Accordingly, Defendant Duarte's motion for summary judgment is granted."

In separate orders, the trial court denied the summary judgment motions filed by Patricia Lopez and Engracia Lopez. The court concluded triable issues of fact existed as to whether those defendants were individually responsible for violations of sections 558 and 1197.1 because the record contained testimony that they personally cut short employees' rest breaks and lunch breaks and adjusted time sheets in a manner that violated the law.

Plaintiffs timely appealed the summary judgment in Duarte's favor.

## DISCUSSION

I.     APPLICABLE LEGAL PRINCIPLES AND STATUTES

A.     <u>Standard of Review</u>

Summary judgment is appropriate "where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476, citing Code Civ. Proc., § 437c, subd. (c).) A defendant is entitled to judgment as a matter of law when it shows that the action has no merit. (Code Civ. Proc., § 437c, subd. (a).) One way a defendant can show a cause of action has no merit is demonstrating one or more of its elements cannot be established. (Code Civ. Proc., § 437c, subds. (o)(1), (p)(2).) This is the method chosen by Duarte.

Appellate review from a grant of summary judgment requires us to examine "the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel*

*National, Inc.* (2000) 24 Cal.4th 317, 334.)  When conducting that review, appellate courts employ the same three-part analysis as the trial court.  (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1206–1207.)  Therefore, we (1) identify the issues framed by the pleadings, (2) determine whether the moving party has established facts justifying judgment in its favor; and (3) determine whether the nonmoving party has demonstrated a triable issue of material fact.  (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1602.)  The California Supreme Court directs us to "liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

      B.     <u>Labor Code Provisions</u>

      *1.     PAGA*

"PAGA [] empowers employees to sue … to recover civil penalties previously recoverable only by the Labor Commissioner."  (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 184–185 (*ZB, N.A.*).)  The statute "also creates new civil penalties, equally enforceable by aggrieved employees, for most other Labor Code violations that previously did not carry such penalties."  (*Id.* at p. 185, citing § 2699, subds. (f), (g)(1).)

Essentially, PAGA is a "procedural statute" that permits an "aggrieved employee" to recover civil penalties arising from Labor Code violations.  (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003.)  The Legislature enacted PAGA " "to augment the limited enforcement capability of the [State] by empowering employees to enforce the Labor Code as representatives of the [State].' "  (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 86.)  Therefore, a PAGA plaintiff operates as the state's deputy or representative in what is essentially a dispute between an employer and the state brought "to protect the public, not

to benefit private parties."  (*Amalgamated Transit Union, Local 1756, AFL-CIO*, at p. 1003.)  Section 2699, subdivision (a) states:

> "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."  (§ 2699, subd. (a).)

PAGA defines an " 'aggrieved employee' " as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."  (§ 2699, subd. (c).)

PAGA also contains " 'a default penalty and a private right of action.' "  (*Home Depot U.S.A., Inc. v. Superior Court* (2010) 191 Cal.App.4th 210, 217.)  Section 2699, subdivision (f) provides:

> "(f) For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows:
>
>> "(1) If, at the time of the alleged violation, the person does not employ one or more employees, the civil penalty is five hundred dollars ($500).
>>
>> "(2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."  (§ 2699, subd. (f)(1)–(2).)

2.      *Section 558*

Section 558 composes a portion of the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999.  (*ZB, N.A.*, *supra*, 8 Cal.5th at p. 187.)  Section 558—

titled "Violations of chapter or order of the [IWC];[3] civil penalties"—permits the Labor Commissioner to issue citations, including an assessment of civil penalties, for overtime and other workday violations. (*ZB, N.A.*, at p. 187.) Section 558 states in relevant part:

> "(a) *Any employer or other person acting on behalf of an employer who violates, or causes to be violated*, a section of this chapter or any provision regulating hours and days of work in any order of the [IWC] shall be subject to a civil penalty .… [¶] … [¶]
>
> "(b) If upon inspection or investigation the Labor Commissioner determines that a person had paid or caused to be paid a wage for overtime work in violation of any provision of this chapter, any provision regulating hours and days of work in any order of the [IWC], or any applicable local overtime law, the Labor Commissioner may issue a citation.…" (§ 558, subds. (a),(b), italics added.)

### 3. Section 1197.1

Division 2, part 4, chapter 1 of the Labor Code concerns "Wages, Hours and Working Conditions." (§§ 1171–1207.) Section 1197 states "payment of a lower wage than the minimum so fixed is unlawful." Section 1197.1 imposes penalties for failing to pay minimum wage. (See *Jaime Zepeda Labor Contracting, Inc. v. Department of Industrial Relations* (2021) 67 Cal.App.5th 891, 906–907.) Section 1197.1 states in relevant part:

> "(a) *Any employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an applicable state or local law*, or by an order of the commission, shall be subject to a civil penalty, restitution of wages, liquidated damages payable to the employee …: [¶] … [¶]

---

**3**    The IWC is the state agency empowered to formulate regulations (known as wage orders) governing minimum wages, maximum hours, and overtime pay in the State of California. (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 795.) Wage orders retain the force of law and there are presently 18 in effect—16 of which cover specific industries, one of which covers all employees not covered by an industry or occupation order, and a general minimum wage order. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1102, fn. 4; *Martinez v. Combs* (2010) 49 Cal.4th 35, 57.)

15.

"(b) If, upon inspection or investigation, the Labor Commissioner determines that a person has paid or caused to be paid a wage less than the minimum under applicable law, the Labor Commissioner may issue a citation to the person in violation."  (§ 1197.1, subds. (a), (b), italics added.)

C.      *Atempa* and Framing the Issue

1.      *An Owner-officer Can be Personally Liable for Civil Penalties*

In *Atempa*, former employees of an incorporated restaurant (Pama, Inc.) sued the corporation for various violations of the Labor Code and included a cause of action against both the corporation and its owner, president, and director (Pedrazzani) for civil penalties under PAGA.  (*Atempa*, *supra*, 27 Cal.App.5th at p. 813.)  After a bench trial, the court imposed joint and several liability on Pedrazzani and the corporation for PAGA civil penalties.  (*Atempa*, at p. 814.)  The trial court found Pedrazzani was liable as the person other than the corporate employer who either violated or caused the violation of the Labor Code provisions governing overtime pay and minimum wages.  (*Id*. at p. 812.)

Pedrazzani appealed, raising a relatively narrow legal issue.  The Fourth District Court of Appeal established the context for that legal issue by noting that Pedrazzani had not challenged the sufficiency of the evidence supporting the findings as to his participation in the payment of wages that violated overtime pay and minimum wage laws. (*Atempa*, *supra*, 27 Cal.App.5th at p. 817.)  The court then framed the issue presented as follows:

> "Under sections 558[, subdivision ](a) and 1197.1[, subdivision ](a), can an individual officer or agent of a corporate employer be personally liable *to an employee* of the corporate employer for the civil penalties authorized for overtime pay and minimum wage violations, where there is no allegation or finding of either an alter ego relationship between the individual officer or agent and the corporate employer or acts by the individual officer or agent outside the scope of the agency for the corporate employer?" (*Atempa*, *supra*, 27 Cal.App.5th at p. 817, italics added.)

The Fourth District Court of Appeal's analysis had two parts.  First, it examined the statutory text to determine if someone other than the employer could be liable for

16.

civil penalties. Second, it considered who could recover the civil penalties. On the question of who could be liable, the court concluded the language in section 558, subdivision (a) and section 1197.1, subdivision (a) was "broad enough to *unambiguously* include Pedrazzani as a person *other than the corporate employer* subject to the civil penalties awarded by the trial court under those two statutes." (*Atempa*, *supra*, 27 Cal.App.5th at p. 824.)

On the question of who could sue to recover the civil penalties, the court noted that sections 558, subdivision (a) and 1197.1, subdivision (a) "only authorize *the Labor Commissioner* to recover the penalties" and then turned to PAGA's text. (*Atempa*, *supra*, 27 Cal.App.5th at p. 826.) In particular, the court considered section 2699, subdivision (a), which provides that "any provision of [the Labor C]ode that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency [, including the Labor Commissioner,] for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees." (§ 2699, subd. (a); see *Atempa*, at p. 816.) In addition, section 2699, subdivision (i) provides that "civil penalties recovered by aggrieved employees shall be distributed as follows: 75 percent to the Labor and Workforce Development Agency ... and 25 percent to the aggrieved employees." (§ 2699, subd. (i); see *Atempa*, at p. 816.) Based on the clear language in section 2699, the court concluded PAGA allows an aggrieved employee to recover the civil penalties imposed by sections 558 and 1197.1. (*Atempa*, at p. 826.) The court noted Pedrazzani had not challenged whether section 2699 applied or whether the plaintiffs qualified as aggrieved employees under the statute. (*Atempa*, at pp. 826–827.) Accordingly, the Fourth District Court of Appeal affirmed the portions of the judgment holding Pedrazzani liable for civil penalties. (*Id.* at p. 831.)

We agree with the Fourth District Court of Appeal's analysis of the meaning of the Labor Code provisions. Sections 558 and 1197.1 unambiguously provide that an

individual other than the corporate employer may be liable for the civil penalties imposed by those sections. Also, section 2699 unambiguously allows an aggrieved employee to sue and recover civil penalties for Labor Code violations. (See *ZB, N.A.*, *supra*, 8 Cal.5th at pp. 184–185.)[4]

### 2. *Step One of the Summary Judgment Analysis—Framing the Issue*

With the foregoing questions of statutory interpretation resolved, we undertake the first step in analyzing a summary judgment motion and identify the issues framed by the pleadings. (See *AARTS Productions*, *Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064.) The motion must show "there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading." (*Ibid*.; see *Brantley v. Pisaro*, *supra*, 42 Cal.App.4th at p. 1602.)

Paragraph 3 of the FAC alleges Duarte and the other individual defendants are persons who violated or caused to be violated sections 558 and 1197.1 and IWC wage orders. Similarly, paragraph 17 alleges Duarte and the others "are persons who violated or caused the violations of the California Labor Code and provisions regulating hours and days of work as detailed in the applicable Industrial Wage Commission Wage Order."

In response to these allegations, Duarte's moving papers assert "he can only be subject to [liability] as an 'other person' if there is a sufficient showing that he was responsible [for] an underlying wage violation." Plaintiffs' opposition papers quote their allegation that Duarte was a person who violated or caused violations of the Labor Code and contend he "was responsible for setting employee wages and failed to provide legally compliant rest periods." Under Plaintiffs' view of the law, sections 558, 1197.1 and 2699, subdivision (f), "provide[] for individual liability for all persons who violate or

---

[4] We do not reach the issue of whether Plaintiffs qualify as aggrieved employees with respect to Duarte.

cause to be violated provisions of the California Labor Code or California Regulations, including IWC wage orders."

Based on the FAC's allegations, Duarte's moving papers, and Plaintiffs' opposition papers, we conclude the issue framed for our consideration is whether Duarte was a person who violated or caused a violation of the wage and hour law. This is the essential element of Plaintiffs' claim that Duarte's motion seeks to negate. Consequently, the second step of the summary judgment analysis addresses whether Duarte carried his initial burden by making a prima facie showing that he did not violate, or cause a violation of, the Labor Code or IWC wage order. (Code Civ. Proc., § 437c, subd. (p)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 [moving party's burden to make a prima facie showing].)

D.  <u>Case Law Addressing Whether a Person Violated or Caused a Violation</u>

Before we consider whether Duarte carried his initial burden, we address what it means to be a "person acting on behalf of an employer who violates, or causes to be violated" a provision of the wage and hour law (§ 558, subd. (a)) and what it means to cause an employee to be paid less than minimum wage (§ 1197.1, subd. (a)). Two recent cases have addressed the meaning of the same or similar statutory text.

*1.*  Usher—*Owner Prevails on Summary Judgment Motion*

In *Usher*, *supra*, 64 Cal.App.5th 883, service technicians sued their employer (White Communications, LLC) for various Labor Code violations based on the misclassification of the technicians as independent contractors instead of employees. (*Id* at p. 887.) Following the enactment of section 558.1, the technicians added two owners of the employer as defendants. (*Usher*, at p. 890.) Under that section, a "natural person who is an owner, director, officer, or managing agent" of an employer may be personally liable if that person, on behalf of the employer, "violates, or causes to be violated" certain

19.

wage and hour laws. (§ 558.1, subds. (a), (b).)[5] One of the owners (Shirley) moved for summary judgment on the ground that she neither employed plaintiffs nor violated, or caused to be violated, any provision of the Labor Code. (*Id*. at p. 888.) The trial court agreed with Shirley and granted her motion. (*Id*. at p. 892.)

On appeal, the Fourth District Court of Appeal stated that "[n]o Court of Appeal has addressed under what circumstances an 'owner, director, officer, or managing agent' of any employer may be held liable under section 558.1." (*Usher*, *supra*, 64 Cal.App.5th at p. 895.) After surveying federal district court decisions analyzing the statutory text and referring to the individual defendant as having been " 'personally involved' in the alleged violations" or having "engaged in 'individual wrongdoing,' " the Fourth District Court of Appeal concluded the words "violates, or causes to be violated" in section 558.1, subdivision (a) have an ordinary meaning. (*Usher*, at pp. 895–896.) The court stated that meaning as follows:

> "[W]e further conclude that to be held liable under section 558.1, an 'owner' such as Shirley must either have been personally involved in the purported violation of one or more of the enumerated provisions; or, absent such personal involvement, had sufficient participation in the activities of the employer, including, for example, over those responsible for the alleged wage and hour violations, such that the 'owner' may be deemed to have contributed to, and thus for purposes of this statute, 'cause[d] a violation."

> "Determining whether an 'owner' 'violate[d], or cause[d] to be violated' the enumerated provisions in subdivision (a) of section 558.1 cannot be determined by any bright line rule, as this inquiry requires an examination of the particular facts in light of the conduct, or lack thereof,

---

[5] Section 558.1, subdivision (a) states: "*Any employer or other person acting on behalf of an employer, who violates, or causes to be violated*, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation." (Italics added.)

Section 558.1, subdivision (b) states that "the term 'other person acting on behalf of an employer' is limited to a natural person who is an owner, director, officer, or managing agent of the employer."

attributable to the 'owner.' But where, as here, the material facts are not in dispute, a trial court may resolve this issue as a matter of law." (*Usher*, *supra*, 64 Cal.App.5th at pp. 896–897, first bracketed insertion added.)

The court applied this statutory interpretation to the evidence before it and concluded Shirley had established that she did not participate in the company's decision to classify the plaintiffs as independent contractors. (*Usher*, *supra*, 64 Cal.App.5th at p. 897.) In addition, the evidence showed Shirley "played no role in the hiring of technicians; did not create, draft or contribute to the content of any of the independent contractor agreements utilized by White Communications; and did not sign any such agreements on behalf of the company." (*Ibid.*) The court also stated Shirley's evidence showed her involvement in the operation and management of the company "was extremely limited." (*Ibid.*) As a result, the court concluded that Shirley had satisfied her initial burden and the burden had shifted to plaintiffs to show a triable issue of material fact as to whether Shirley caused a violation. (*Id.* at pp. 897–898.) The plaintiffs acknowledged that Shirley did not directly participate in the classification decision and relied on evidence of her signature appearing on their paychecks to establish her involvement in the alleged violations. (*Id.* at p. 898.) The court concluded the electronic signatures on paychecks did not create a triable issue as to whether Shirley caused a violation. (*Id.* at p. 899.) Consequently, the Fourth District Court of Appeal affirmed the judgment. (*Id.* at p. 901.)

### 2. Espinoza—*Owner Held Liable*

In *Espinoza v. Hepta Run, Inc.* (2022) 74 Cal.App.5th 44 (*Espinoza*), a truck driver sued his former employer (Hepta Run, Inc.) and its owner (Ed Tseng) for various Labor Code violations, unfair business practices, and civil penalties under PAGA. (*Espinoza*, at p. 48.) Like the plaintiffs in *Usher*, the truck driver alleged Tseng was personally liable pursuant to section 558.1. (*Espinoza*, at p. 59.) During the court trial, Tseng moved for nonsuit and for a directed verdict on the ground plaintiff had failed to prove Tseng caused any Labor Code violation. (*Id.* at p. 50.) Tseng argued his approval

21.

of the recommendations of the manager he hired to operate the business was insufficient to impose personal liability.  (*Ibid*.)  The court denied both motions.  (*Id*. at pp. 50–51.)  After posttrial briefing, the court found Labor Code violations had occurred and held Tseng and Hepta Run, Inc. jointly and severally liable.  (*Id*. at pp. 51–52.)

Tseng appealed, arguing he could not be personally liable because he was uninvolved in the company's daily operations.  (*Espinoza*, *supra*, 74 Cal.App.5th at p. 58.)  The Second District Court of Appeal rejected Tseng's argument and set forth its statutory interpretation by stating:

> "We agree generally with *Usher* and the federal cases it cited that, in order to 'cause' a violation of the Labor Code, an individual must have engaged in some affirmative action beyond his or her status as an owner, officer or director of the corporation.  However, that does not necessarily mean the individual must have had involvement in the day-to-day operations of the company, nor is it required the individual authored the challenged employment policies or specifically approved their implementation.  But to be held personally liable he or she must have had some oversight of the company's operations or some influence on corporate policy that resulted in Labor Code violations."  (*Espinoza*, *supra*, 74 Cal.App.5th at p. 59.)

Applying this statutory interpretation to the facts presented, the Second District Court of Appeal determined Tseng had caused a Labor Code violation because he was the sole owner of Hepta Run, Inc. and "admitted he had approved the policy regarding payment of truck drivers that violated various provisions of the Labor Code."  (*Espinoza*, *supra*, 74 Cal.App.5th at p. 60.)  The court concluded "an owner's or officer's approval of a corporate policy that violates the Labor Code is sufficient to find that individual caused the Labor Code violation within the meaning of section 558.1."  (*Id*. at p. 58.)

### 3.    *Interpretation of Sections 558 and 1197.1*

The issues of statutory interpretation presented in this appeal include what it means to be a "person acting on behalf of an employer who violates, or causes to be violated" a Labor Code provision (§ 558, subd. (a)) and what it means to be a "person …

22.

who pays or causes to be paid to any employee a wage less than the minimum." (§ 1197.1, subd. (a).) *Usher* and *Espinoza* are instructive because they interpret the statutory language "violates, or causes to be violated" that appears in section 558.1, which is identical to the language used in section 558 and similar to the language used in section 1197.1. In addition, *Usher* and *Espinoza* show how that statutory interpretation was applied to the evidence presented to resolve the causation issue.

As in *Usher* and *Espinoza*, we conclude an owner or officer of a corporate employer does not cause a violation merely by being an owner or officer. Instead, the officer must have engaged in some affirmative conduct beyond that being an owner or officer. In particular, we interpret the statutes to mean an owner and officer such as Duarte must (1) have been personally involved in the purported violation or (2) have had sufficient participation in managing or overseeing the activities of those persons directly responsible for the violation that such participation can be found to have contributed to the violation.

## II.  STEP TWO AND DUARTE'S BURDEN

Duarte testified he does not "do wages" and that he does not participate in DNI's recruiting efforts for "general ag workers." Duarte does not make payroll decisions for "line workers" at DNI. Specifically, Duarte testified:

> "Of the employee groups involved in this case, setting specific wages in terms or piece rate or schedules or anything else, I simply don't make decisions for individuals within those groups of employees."

Duarte also disclaimed responsibility for setting work schedules. Instead, Duarte identified Patricia Lopez and Charlie Gonzalez as the persons primarily responsible for this task and stated they worked under Jeff. Duarte denied responsibility for providing the specific timeframes for meal and rest periods for DNI employees.

Plaintiff Navarro testified Duarte was not her supervisor and confirmed she never spoke with Duarte during her employment with DNI. Navarro was not aware of any documents supporting her assertion that Duarte violated the Labor Code or wage orders and did not possess any such documents. Plaintiff Aguilar believed "the company" set the wages at DNI.

Thus, Duarte presented evidence that he did not directly participate in the alleged violations regarding the payment of wages and break periods. (Cf. *Usher*, *supra*, 64 Cal.App.5th at pp. 897–898 [Shirley met her initial burden by showing she "did not directly participate in the decision to classify [the plaintiffs] as independent contractors and not employees of the company."].) Consequently, we conclude Duarte met his initial burden to show he did not violate or cause a violation of section 558 or section 1197.1 and, as a result, the burden shifts to Plaintiffs to show a triable issue of material fact about Duarte's personal involvement in a Labor Code violation or his participation in managing or overseeing the activities of persons directly responsible to such a violation.

III.    STEP THREE AND PLAINTIFF'S BURDEN

Plaintiffs contend they "presented sufficient evidence that [] Duarte is a decisionmaker regarding operational and managerial decisions implemented by [DNI] that resulted in the Labor Code violations alleged in Plaintiffs' lawsuit." (Cf. *Usher*, *supra*, 64 Cal.App.5th at p. 898 [the plaintiffs argued "there are triable issues of material fact whether Shirley's involvement in the operation and management of White Communications 'cause[d]' the violation of one or more of the enumerated provisions."].) In Plaintiffs' view, there is evidence of "sufficient participation in the activities" of DNI to find Duarte personally liable.

24.

A.    Wages and Hours

Plaintiffs refer to Duarte's testimony "that he <u>does</u> interact with non-exempt employees and is asked directly about wages."  Additionally, Plaintiffs credit Duarte's testimony stating:

> "If minimum wages has gone up a dollar—we'll say hey minimum wage has gone up a dollar.  Are going to go up a dollar?  Because we might be 50 cents or a dollar off minimum wage at our hiring start rate, so generally do some high level—yeah everybody hourly is going up a dollar each other or, you know, 50 cents or—so we'll do a high level overview of what wages are going to do in a general way."

Plaintiffs emphasize Duarte's statement that he is "responsible for whatever … happens" in DNI and that most of the decisionmaking rests with Duarte and Jeff.

The foregoing testimony does not create a triable issue of fact about Duarte's personal involvement in a Labor Code violation or his participation in managing or overseeing the activities of persons directly responsible to such a violation.  Regarding his interactions with employees, Duarte stated he walks through DNI's greenhouses "now and then" and has "casual contact" with employees.  Later, Duarte stated "I'll listen to any supervisor or employee come talk to me about anything."  This evidence is akin to the plaintiffs' unsuccessful argument in *Usher* that a triable issue arose because the plaintiff met Shirley once at a training and she spoke with the plaintiff "on the phone about work."  (*Usher*, *supra*, 64 Cal.App.5th at pp. 900–901.)

Duarte receiving employee questions about wages from "[a]nybody who wants to talk to me" does not alter our conclusion.  Duarte then stated he would "let Jeff know I met with them" and Jeff would then "work to [*sic*] Charlie [Gonazalez]" to see "what they want to do."  Duarte did not state he would take any action beyond relaying that information to Jeff.  Duarte listening to employee questions about wages and relaying those concerns to Jeff is not conduct that, by itself, caused an alleged violation of sections 558 and 1197.1.  Furthermore, there is no evidence of additional acts by Duarte

25.

that would *link* his relaying of information to an ultimate violation of wage and hour law. Thus, a reasonable trier of fact that heard Duarte's testimony about his interactions with employees could not reasonably infer that Duarte caused a violation of the Labor Code. (See Code Civ. Proc., § 437c, subd. (c) [court shall consider inferences reasonably deducible from the evidence].)

Duarte's testimony also addressed whether there was "any discussion" about rates of pay for nonsalaried nursery workers. These discussions occur at "management executive level meeting[s]" with controller Greg Stoll and Jeff—the "core executive team in terms of finance and budgets." These meetings include an "employee compensation overview." Duarte testified they discuss pricing the company's health care package and examine "company budgets and the pricing models we're using" to ensure "everything fits together in terms of profitability and costs and competitiveness." According to Duarte, his participation in "payroll policy" at DNI is limited to an "annual look over of what we [a]re to do in terms of overall wages increases, you know, where the minimum wage lie is."

Duarte's testimony establishes he participates in executive level meetings that address employee compensation and include discussion of pay rates for DNI employees. But unlike *Espinoza*, there is no evidentiary link between these discussions about rates and any purported Labor Code violations. (Cf. *Espinoza*, *supra*, 74 Cal.App.5th at p. 60 [Tseng "admitted he had approved the policy regarding payment of truck drivers that violated various provisions of the Labor Code"].) For instance, there is no evidence Duarte approved a wage rate below the minimum required by law. Instead, the violation asserted in Navarro's testimony was that "[t]hey didn't pay us the hours that we worked." However, there is no evidence before us regarding how much Plaintiffs worked, the tasks for which they were compensated, what tasks they performed without compensation, and (most importantly for this summary judgment motion) how Duarte's conduct had a role in causing the alleged underpayment.

26.

We reach the same conclusion regarding Duarte's testimony about his overall responsibility for DNI and about Jeff and Duarte making most of the decisions for the company. There is no evidence that Duarte's affirmative conduct in overseeing intermediate management personnel caused a Labor Code violation. The evidence shows that Charlie Gonzalez is the labor and safety manager for DNI, that Gonzalez works under Jeff, and that Patricia Lopez works under Gonzalez.[6] Jeff handles "production meetings" whereas Duarte addresses "customer interactions, working with researchers, technology, marketing[, and] sales." The responsibility for DNI's labor practices fell on Jeff Duarte and those working under him. (See *Usher*, *supra*, 64 Cal.App.5th at p. 897.) Furthermore, there is no evidence Duarte approved a particular policy that caused violations of the Labor Code. (Cf. *Espinoza*, *supra*, 74 Cal.App.5th at p. 60 [owner admitted he approved the policy regarding payment of truck drivers that violated various Labor Code provisions].) Thus, Duarte's generalized statements that reflect his management role at DNI does not create a triable issue of material fact as to whether he caused one of the alleged violations of the Labor Code.

B.     Meal and Rest Breaks

Plaintiffs also assert there is a triable issue of fact as to Duarte's participation in the alleged meal and rest period violations. Plaintiffs emphasize Duarte's testimony wherein he stated "I obviously need to make sure that meal and rest periods are provided …."

The evidence presented does not create a triable issue of fact about whether Duarte participated in violations involving meal and rest breaks. Plaintiffs' reference to Duarte's testimony omits his statement that "exactly when [meal and rest periods are] provided and when they are scheduled in the day is not something that I get involved with

---

[6]     Duarte testified Jeff "has Charlie Gonzalez—I believe is his labor and safety manager. And then [Patricia Lopez] maybe the labor supervisor under Charlie, so." Later in that portion of testimony, Duarte stated "I believe work wise it's Jeff to Charlie to [Patricia Lopez]."

directly." Thus, we reject Plaintiffs' contention that Duarte "testified to his *direct oversight* over the provision of meal and rest breaks." (Italics added.) Moreover, in other portions of his testimony, Duarte identified Gonzalez as the "compliance" person responsible for rest periods, a person who works under Jeff. Thus, the evidence presented does not show affirmative conduct sufficient to create a triable issue of fact as to whether Duarte violated, or caused to be violated, a Labor Code provision addressing meal or rest breaks.

      C.      <u>Expense Reimbursement</u>

Plaintiffs also argue the trial court erred in granting summary judgment because Duarte's motion did not dispose of Plaintiffs' entire PAGA claim. Plaintiffs contend their fourth cause of action alleges a failure to reimburse expenses in violation of section 2802, a predicate violation for which PAGA penalties are sought.

Duarte testified that he did not make decisions for individual employees on issues with their payroll data. This testimony, coupled with Duarte's other testimony about his responsibilities as CEO, is sufficient to carry his burden of showing he was not involved in any failure to pay for reimbursable expenses incurred by an employee. Therefore, the burden shifted to Plaintiffs to present evidence demonstrating a triable issue of fact involving their section 2802 claim. (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 589 [when the burden has shifted, the plaintiff must set forth specific facts which prove the existence of a triable issue of material fact].)

Plaintiff Navarro testified that she believed Duarte violated the Labor Code because "[t]hey didn't pay us the hours that we worked." She did not testify Duarte failed to reimburse her for expenses incurred in purchasing personal protective equipment. She also testified that she did not possess and was unaware of documentary evidence supporting the contention that Duarte violated the Labor Code. (See *Hernandez v. Enterprise Rent-A-Car Co. of San Francisco* (2019) 37 Cal.App.5th 187, 197

28.

[plaintiff's admission in interrogatory response that she did not have documentary evidence supporting claim of successor liability justified affirming the trial court's grant of summary judgment].) Thus, Plaintiffs have failed to present evidence showing Duarte engaged in affirmative conduct that caused a failure to reimburse expenses in violation of section 2802.

> D. New Argument

At oral argument, Plaintiffs' counsel asserted DNI did not record meal periods. By extension, Plaintiffs argued this shifted the burden to show DNI provided meal periods. Plaintiffs cited the Supreme Court's recent decision in *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58 in support of this argument. Plaintiffs did not raise the failure-to-record-meal-period issue or cite *Donohue* in their opening or reply briefs. (See Cal. Rules of Court, rule 8.204(a)(1)(B).) Therefore, the argument is forfeited. (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9 [arguments raised for the first time at oral argument need not be considered].)

## DISPOSITION

The judgement is affirmed. Duarte shall recover his costs on appeal.

HILL, P. J.

WE CONCUR:

FRANSON, J.

PEÑA, J.